### BELT RY. CO. OF CHICAGO v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.
Submitted October 15, 1929. Decided
December 2, 1929.

No. 4814.

R. Kemp Slaughter and Hugh C. Bickford, both of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and Sewall Key, Thomas P. Dudley, Jr., John Vaughan Groner, C. M. Charest, and W. P. Hughes, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a decision of the United States Board of Tax Appeals, affirming the finding of the Commissioner of Internal Revenue, denying appellant company the right to deduct depreciation charges for the years 1916 and 1917.

The petitioner, the Belt Railway Company of Chicago, is an Illinois corporation engaged in operating freight and passenger train terminal facilities in Chicago for the benefit of 12 railway companies entering that city. All of the capital stock of the Belt Company is owned in equal amounts by these 12 companies. For convenience, these railway companies will be referred to hereafter as the tenant companies. During the years in question the appellant company did not own the tracks, right of way, rolling stock, and other equipment used by it, but operated the same under a 50-year lease from the owner, the Chicago & Western Indiana Railroad Company. It was merely a corporate agency created for the benefit of the tenant companies.

By the terms of the lease, the Belt Company was obligated to pay as rental for the use of the properties $5 on the 1st day of January of every year during said term; monthly, on the last day of each month, one-twelfth of $828,000, being the annual interest at the rate of 4 per cent. upon $4,000,000, the valuation placed upon the Belt Railway; monthly, on the last day of each month, one-twelfth of $39,840, being the annual interest upon $996,000 of the consolidated mortgage bonds of the Western Indiana Company, which had been issued and used for additions and betterments to the Belt Railway between May 11, 1911, and September 2, 1912; and monthly, one-twelfth of the annual interest on all obligations of the lessor company issued and outstanding from time to time, the profits of which shall have been used after September 2, 1912, for the construction or acquisition of additions or betterments to said leased properties.

The business operations of appellant company were controlled by the terms of its contract with the Indiana Company and its contract with the 12 tenant companies, and appellant was to operate the terminal facilities for the benefit of the tenant lines. Appellant was obligated to pay the lessor as rental for the use of the properties large interest payments on bonds which had been issued or were to be issued for the construction of the leased properties. This interest was to be collected from the tenant lines by way of rental. Appellant Belt Company was required to account for all its working expenses, and monthly charge the total of such expenses against the tenant companies. It was also entitled to charge against the tenant companies an amount sufficient to allow it to pay dividends of 6 per cent. on its capital stock. These charges were based upon the use of the

belt line by the tenant lines. As a result the gross income and expenses of appellant corporation were so balanced each year as to show a profit of $172,800, the exact amount necessary for its dividend requirements.

The net working expenses, including an accrued depreciation charge, was in addition to the dividend requirements as above stated. The amounts deducted for depreciation were included in the expense account, which was allocated to and charged against the tenant companies in proper proportion, and were paid to appellant company by the tenant companies. The amounts so paid were credited by appellant to an account designated as "Accrued Depreciation on Equipment of the C. & W. I. Railroad Company," and were held by appellant to meet obligations arising for the replacement of the leased equipment.

Appellant company, in making its tax returns for the years 1916 and 1917, included in its gross income the amounts which it had collected from the tenant lines for depreciation, in the amount of $28,978.59 for the year 1916 and $27,846.96 for the year 1917. The Commissioner disallowed these deductions, but held that they should remain in the gross income. The Board of Tax Appeals affirmed the holding of the Commissioner, on the ground that appellant company had no cost or capital investment in the leased railway line on which depreciation could be allowed.

Section 12 of the Revenue Act of 1916, 39 Stat. 756, 767, among other things, provides: "(a) In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources— First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade."

The deduction which appellant company here seeks is a sum set aside as a reserve for the exhaustion of property which, under its lease, it was required to replace. It must be remembered that appellant company had no capital investment whatever in any of the leased property. It was the property of the Indiana Company, and remained such under the terms of the lease. Wear and tear and depreciation of the property would not exhaust any capital investment made by the appellant company. Having no capital investment in the property, it is not entitled to any deduction.

In United States v. Ludey, 274 U. S. 295, 300, 47 S. Ct. 608, 610, 71 L. Ed. 1054, the court, considering the subject of depreciation under the Revenue Act of 1916 (39 Stat. 756), said: "The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums * * * will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold."

In Duffy v. Central Railroad, 268 U. S. 55, 45 S. Ct. 429, 69 L. Ed. 846, where the taxpayer, operating under a lease similar to the one before us, acquired rights in an old pier and replaced it with a new one. The company attempted to deduct the total amount thus expended as an ordinary and necessary expense. The court denied this right on the ground that it was a capital investment recoverable only by annual depreciation allowances. It will be observed that in that case a capital expenditure had actually been made. Here no expenditures have been made, and no capital investment has been made. There a capital investment had been made to the extent of acquiring private rights in the old pier and the construction of a new pier. When appellant company is called upon to replace any of the equipment of the leased Indiana Railway system, that will constitute capital investment, recoverable by annual depreciation allowances. The deduction here sought is merely upon a contingent replacement fund, which may or may not in the future find its way into capital investment. Until it does, appellant cannot avail itself of any allowance for depreciation or exhaustion.

The decision of the Board of Tax Appeals is affirmed, with costs.