## V. LOEWERS GAMBRINUS BREWERY COMPANY v. ANDERSON, INDIVIDUALLY AND AS COLLECTOR OF INTERNAL REVENUE.

No. 352. Argued January 22, 1931.—Decided February 24, 1931.

*Mr. Arthur B. Hyman,* with whom *Mr. Karl D. Loos* was on the brief, for petitioner.

*Mr. Claude R. Branch,* Special Assistant to the Attorney General, with whom *Solicitor General. Thacher, Assistant Attorney General Youngquist* · and *Messrs. Sewall· Key, J. Louis.Monarch* and *John MacC. Hudson,* Special Assistants to the Attorney General, *Paul D. Miller,* and *Clarence M. Charest,* General Counsel, Bureau of Internal Revenue, were on the brief, for respondent.

*Messrs. Frank S. Bright* and *H. Stanley Hinrichs,* by special leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner sued respondent in the District Court for the Southern District of New York and obtained judgment for $22,091.01 on account of income and profits taxes for 1918 and 1919 erroneously exacted. The Circuit Court of Appeals reversed; and, as the right of petitioner to recover $4,128.85 was not contested, ordered that it have judgment for that amount. 42 F. (2d) 216. This court granted petitioner's application for a writ of certiorari, limited to the question whether petitioner is entitled under § 234 (a) (7) of the Revenue Act of 1918

to any deduction for obsolescence of its tangible property in such years.

Revenue Act of 1918, c. 18, 40 Stat. 1077, 1078, provides:

"Sec. 234. (a) That in computing the net income of a corporation . . . . there shall be allowed as deductions . . . (7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence; . . . . "

A jury having been waived in writing, the case was tried by the court without a jury. The court found:

Plaintiff, from 1879 until October 29, 1919, was engaged at New York City in the business of manufacturing and selling beers, ales and porter and for that purpose erected and installed suitable buildings and equipment. January 31, 1918, it had become common knowledge and was known to plaintiff that prohibition would become effective and that as a result plaintiff and others engaged in that business would suffer obsolescence in the value of their capital assets. Prohibition did become effective January 16, 1920. As found by the Commissioner of Internal Revenue, the depreciated cost of plaintiff's buildings as of that date was $153,932.18. The buildings were constructed especially for the purposes of such manufacture and were not commercially adaptable for any other use. They had no salvage value. As a result of prohibition and beginning January 31, 1918, and ending January 16, 1920, plaintiff suffered obsolescence of such buildings equal to such depreciated cost which should be rateably apportioned over that period. After making provision for allowances for such obsolescence, plaintiff had no net income for 1918 or 1919.

And at defendant's request the court found: With the advent of prohibition it became illegal to manufacture beers, ales and porter having an alcoholic content in excess of one-half of one per cent. Accordingly such man-

ufacture was discontinued by the plaintiff when the pro-
hibitory law became effective. Subsequently plaintiff
to a small extent continued the manufacture of beers,
ales and porter having an alcoholic content not in excess
of one-half of one per cent. and it still continues to man-
ufacture such beverages to a small extent.

The sole question for decision is whether, in calculat-
ing its taxes for 1918 and 1919, plaintiff was entitled to
any allowance for obsolescence of its buildings resulting
from the imminence and taking effect of the prohibitory
laws.

The language of § 234 (a) (7) is broad enough to
include all obsolescence from whatever cause. But the
Government maintains that Congress did not intend to
provide compensation in any form for losses caused by
prohibition legislation, and that consequently there can
be no deduction for obsolescence here even upon the facts
found by the District Court. It relies on *Clarke* v.
*Haberle Brewing Co.*, 280 U. S. 384, and *Renziehausen* v.
*Lucas*, 280 U. S. 387.

The case at bar was decided in the District Court
before our decision in the *Haberle* case and on the author-
ity of that decision the Circuit Court of Appeals held
plaintiff not entitled to any allowance for obsolescence of
its buildings. But the sole question presented to us in
that case was whether a brewing company making its tax
return for 1919 under the Act now before us and whose
business would be destroyed by the taking effect of pro-
hibition was entitled to deduct anything on account of
exhaustion or obsolescence of its good will. The court
said (p. 386): "We shall not follow counsel into the suc-
cession of regulations or the variations in the law before
the date of the Act that we have to construe. In our
opinion the words now used cannot be extended to cover
the loss in this case and it is needless to speculate as to

what other cases it might include." When regard is had to the issue between the parties and the point decided, it is clear that there is nothing in our construction of the statute or in the reasons adduced to support the conclusion reached, that is decisive of the question now under consideration, or that suggests that, in respect of allowances for obsolescence of tangible property, the statute does not apply to brewers and their buildings just as it does to others and their tangible property. Indeed the language used definitely limits the opinion to obsolescence of good will.

In *Renziehausen* v. *Lucas* the taxpayer was a distiller. His claim for obsolescence of good will, under § 214 (a) (8) applicable to individuals and in the same words as § 234 (a) (7), was denied on the authority of the *Haberle* case. He also claimed allowances for obsolescence resulting from prohibition to his plant, equipment and bonded warehouses. That claim was denied by the Commissioner but it was allowed by the Board of Tax Appeals, 8 B. T. A. 87, and that decision was affirmed in the Circuit Court of Appeals. 31 F. (2d) 675. The taxpayer insisted here that the allowance for obsolescence of his warehouses was inadequate. The Government opposed the increase but did not challenge either the propriety of an allowance or the amount fixed below. Dealing with the case on the assumption that the statute applied to obsolescence due to prohibition just as it does to that resulting from other causes, we held that the taxpayer had "no reason to complain of the allowance for obsolescence of the warehouses." That case makes against rather than for the Government's present contention.

The tangible property by which a business is carried on is plainly distinguishable from the element of good will inhering therein. The cost of plant depreciation, *i. e.*, exhaustion, wear, tear and obsolescence, is a part of oper-

ating expenses necessary to carry on a manufacturing business. The gain or loss in any year cannot be rightly ascertained without taking into account the amount of such cost that is justly attributable to that period of time.

The history of § 234 (a) (7) discloses a legislative purpose that the amount reasonably attributable to each year on account of obsolescence of tangible property used in the taxpayer's business is to be taken into account in ascertaining his taxable income. The excise tax act of 1909 permitted the deduction of " a reasonable allowance for depreciation of property, if any." [1] Regulations of the Treasury Department construed the provision to mean the loss in value " that arises from exhaustion, wear and tear, or obsolescence out of the uses to which the property is put." [2] The Revenue Act of 1913 provided for a " reasonable allowance for depreciation by use, wear and tear of property if any." [3] The Regulations provided for a deduction for depreciation in the value of the property " that arises from exhaustion, wear and tear, or obsolescence out of the uses to which the property is put." [4] The Revenue Act of 1916 dropped the word depreciation and permitted " a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade." [5] Under that provision no deduction on account of obsolescence was allowed except for the " withdrawal from use of the obsolete property." [6] The House draft of the Act of 1918 provided for an allowance for exhaus-

---

[1] Section 38, 36 Stat. 112.
[2] Regulations 31, Art. 4.
[3] Section II G (b), 38 Stat. 172.
[4] Regulations 33, Art. 129.
[5] Section 12 (a), 39 Stat. 767.
[6] Regulations 33 Revised, Art. 178.

tion, wear and tear. It did not expressly refer to depreciation or obsolescence. The Senate amended by substituting "depreciation" for "exhaustion, wear and tear." In conference that word was taken out and the provision was made to read as it now stands, "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

None of the Acts made any classification based on the causes from which obsolescence results. And, as the sole purpose is to arrive at the net income subject to taxation, it is clear that such a discrimination could not reasonably or justly be made. Section 234 (a) (7) and other provisions of the same substance have been generally, if not uniformly, held to apply to obsolescence of tangible property, whatever its cause, where the amount fairly attributable to the tax year has been shown.[7] There is nothing in the language of the statute or the circumstances of its enactment to suggest that Congress intended that the taxable incomes of brewers should not be arrived at according to the rules that govern taxable incomes of others.

---

[7] *Dean* v. *Hoffheimer Bros. Co.*, 29 F. (2d) 668; *Kansas City Title & Trust Co.* v. *Crooks*, 35 F. (2d) 351; *National Ind. Alcohol Co.* v. *Commissioner*, 38 F. (2d) 718; Michigan Lithographing Co., 1 B. T. A. 989; Robert H. McCormick, 2 B. T. A. 430; Dilling Cotton Mills, 2 B. T. A. 127; Annie L. Dean, 3 B. T. A. 896; Northern Hotel Co., 3 B. T. A. 1099; American Valve Co., 4 B. T. A. 1204; Auditorium Co., 5 B. T. A. 163; Northeastern Oil & Gas Co., 5 B. T. A. 332, 337; Corsicana Gas & Elec. Co., 6 B. T. A. 565; Balaban & Katz Corporation, 6 B. T. A. 610; Manhattan Brewing Co., 6 B. T. A. 952; Mary M. Dowling, 6 B. T. A. 976, 979; Star Brewing Co., 7 B. T. A. 377; National Industrial Alcohol Co., 7 B. T. A. 1241; Konrad Schreier Co., 9 B. T. A. 407; George Wiedemann Brewing Co., 9 B. T. A. 792; J. Chr. G. Hupfel Co., 9 B. T. A. 944; Milwaukee-Waukesha Brewing Co., 15 B. T. A. 579.

The Government also insists that in any event there was no obsolescence in plaintiff's buildings in 1918 or 1919 because, from its very nature, obsolescence begins only when there is a reasonable certainty that the property will become obsolete.

The statute contemplates annual allowance for obsolescence just as it does for exhaustion, wear and tear. That is necessary in order to determine true gain or loss because postponement of deductions to cover obsolescence until the property involved became obsolete would distort annual income. It is well understood that exhaustion, wear, tear or obsolescence cannot be accurately measured as it progresses and undoubtedly it was for that reason that the statute authorized "reasonable" allowances to cover them in order equably to spread that element of operating expenses through the years. The findings of fact show that the imminence of prohibition became known in January of 1918 and that it took effect in January of 1920. The court found that, although they were subsequently used to a small extent in the manufacture of non-intoxicating beverages, plaintiff's buildings had no salvage value when prohibition took effect. Undoubtedly it was obvious from the beginning of that period that buildings not commercially adaptable to any use other than brewing intoxicating liquor would suffer obsolescence because of the destruction of that business.

Under the order granting the writ there is before us no question as to the propriety of the amount of the allowance or its allocation between the tax years in question.

> *Judgment of the Circuit Court of Appeals reversed.*
> *Judgment of the District Court affirmed.*

MR. JUSTICE STONE concurs in the result.