THE RODEO-VALLEJO FERRY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36411, 48528. Promulgated November 25, 1931.

*Neil E. Larkin, Esq.,* for the petitioner.
*John D. Kiley, Esq.,* for the respondent.

938

OPINION.

VAN FOSSAN: The statute (section 234 (a) (7) of the Revenue Act of 1924) provides for " a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business, including a reasonable allowance for obsolescence." In *Loewers Gambrinus Brewery* v. *United States*, 282 U. S. 638, Mr. Justice Butler states, " the language of section 234 (a) (7) is broad enough to include all obsolescence from whatever cause." And in *Burnet* v. *Niagara Falls Brewing Co.*, 282 U. S. 648, the same learned justice said:

\* \* \* The word [obsolescence] is much used, and its meaning depends upon and varies with the connections in which it is employed. It has been said to be " the condition or process by which units gradually cease to be useful or profitable as a part of the property, on account of changed conditions." Obsolescence is not necessarily confined to particular elements or parts of a plant, the whole may become obsolete. Obsolescence may arise as the result of laws regulating or forbidding the particular use of the property as well as from changes in the art, the shifting of business centers, loss of trade, inadequacy, or other causes.

In the same case the court observes:

\* \* \* The provision is general and applied alike to all taxpayers; its purpose is to guide the ascertainment of taxable income in each year. It is a familiar rule that tax laws are to be liberally construed in favor of taxpayers. [Citing cases.]

\*        \*        \*        \*        \*        \*        \*

It would be unreasonable and violate that canon of construction to put upon the taxpayer the burden of proving to a reasonable certainty the existence and amount of obsolescence. Such weight of evidence as would reasonably support a verdict for a plaintiff in an ordinary action for the recovery of money fairly may be deemed sufficient. Neither the cost of the obsolescence nor of accruing exhaustion, wear, and tear that is properly chargeable in any period of time can be measured accurately. A reasonable approximation of the amount that fairly may be included in the accounts of any year is all that is required. In determining the proper deduction for obsolescence, there is to be taken into consideration the amount probably recoverable, at the end of its service, by putting the property to another use or by selling it as scrap or otherwise. There is no hard and fast rule, as suggested by the government, that a taxpayer must show that his property will be scrapped or cease to be used or useful for any purpose, before any allowance may be made for obsolescence.

There is nothing mysterious about obsolescence. It is a factor widely present in all business. Its existence is a fact to be established as other facts are established and when proven its allowability as a deduction is authorized by law.

Viewing the situation before us we have no difficulty in concluding that it is one in which a deduction for obsolescence might be proper. The intervention in petitioner's economic world of the new means of transportation across the Strait foretold the end of the economic usefulness of petitioner's ferry and the equipment used therein. The normal processes of exhaustion, wear and tear were supplemented and superseded by a very positive and actual factor in competition with which the ferry could not hope to be successful. The amount by which this factor hastened the economic demise of petitioner's equipment, less salvage value, is the measure of obsolescence.

It is our opinion that even before the actual signing of the contracts in 1925 petitioner was justified in concluding that upon the opening of the bridge for traffic May 31, 1927, its ferry would be entirely obsolete. With the obsolescence of the ferry as a means of local transportation established as a fact certain to occur, the approaching date of the obsoleteness for petitioner's purposes of the equipment used therein was likewise fixed. Knowing these facts and facing the eventuality of finding some other use for its equipment or of selling the same to the best advantage possible in the premises, neither of which avenues might return petitioner's investment without loss, petitioner took appropriate steps to minimize such probable loss and to claim an obsolescence deduction in its tax return. It offered its boats for sale as of May 31, 1927. Sale of one boat was accomplished in 1927 and of the other in 1929. These sales, having occurred before the hearing in this case, remove all speculation as to the salvage value of the equipment and of the fact of economic loss.

Having concluded that petitioner was entitled to claim some amount on account of obsolescence in addition to normal depreciation, the only problem is the reasonably accurate estimation of the amount to which it was so entitled.

Though petitioner's ferry became obsolete in 1927 and its facilities were as to it also obsolete, the two boats were still useful to a degree if an appropriate place for their utilization could be found. They were not of a type and construction to be used with safety in the lower Bay, hence, their only market was for use in a location comparable with petitioner's ferry. Such a use was found for one boat in 1927 and for the other in 1929, but the proceeds from the sale were not sufficient to wipe out the unrecovered investment in the boats.

The established facts are that on January 1, 1925, the basic cost of the " Issaquah " was $86,516.84, against which there had been allowed depreciation in the amount of $18,554.74, making a net unrecovered cost of $67,962.10. The salvage value of the " Issaquah " in 1929 was $20,000. The net cost recoverable during the period January 1, 1925, to May 31, 1927, was $47,962.10. Respondent has allowed $5,741.14 as depreciation during 1925 and 1926, leaving an unrecovered amount of $42,220.96. This amount petitioner was entitled to recover over the period January 1, 1925, to May 31, 1927. This sum should be prorated over such period and covers the additional allowance on account of obsolescence.

The cost of the " San Jose " on May 6, 1925, the date of acquisition, was $128,626.82. The net salvage value ($65,000 less $20,226.14) was established by sale in August, 1927, at $44,773.86. The net cost recoverable through the period May 6, 1925, to May 31, 1927, was $83,852.96. Respondent has allowed during the period May 1, 1925, to December 31, 1926, the sum of $17,021.08 as depreciation, leaving an unrecovered amount of $66,831.88 which petitioner was entitled to recover during the period May 6, 1925, to May 31, 1927.

There remain for consideration two small items. The first, a gift of $50 to an employee on the occasion of his marriage, is disallowed. The evidence shows this to be a gift and not an ordinary and necessary expense. The second, a payment to Victory Highway Association, is allowed. The motive behind the payment was purely a business one and the payment actually resulted in increasing traffic over petitioner's ferry.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MORRIS, STERNHAGEN, and MURDOCK dissent.