ILLINOIS CENT. R. CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6054.

Circuit Court of Appeals, Seventh Circuit.

May 21, 1937.

R. C. Beckett and Edward C. Craig, both of Chicago, Ill., for petitioners.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This petition for review challenges the decision of the Board of Tax Appeals rendered on April 22, 1936, determining deficiencies in taxable income for the years 1926, 1927, 1928, and 1929.

The taxable income was that of the Yazoo & Mississippi Valley Railroad Company, a subsidiary of the Illinois Central Railroad Company, which latter company filed a consolidated return for both companies for each of the years in question. Any additional taxes or refunds are payable or recoverable by the Illinois Central Railroad Company.

·Several items were in controversy, but the only one now involved is with reference to the liability accrued on the lessee's books growing out of the retirement of certain equipment, i. e., locomotives and cars, owned by the Alabama & Vicksburg Railway Company and the Vicksburg, Shreveport & Pacific Railway Company, the respective properties of which companies are leased to and operated by the Yazoo & Mississippi Valley Railroad Company.

On March 31, 1925, the latter company, herein called the lessee, entered into separate agreements with the Alabama & Vicks-

burg Railway Company and the Vicksburg, Shreveport & Pacific Railway Company, herein called the lessors, by the terms of which it leased the properties of the two last-mentioned companies until July 1, 2282, with options to renew the leases for an additional period of 999 years. The lessee agreed that it would keep up, maintain, repair, replace, and renew the leased properties during the terms of the leases, so that such properties would at all times be in substantially as good repair, working order, and condition as they were at the effective date of the lease agreements; and that, whenever during the terms of the leases any part of the leased properties, including rolling stock and equipment, should be damaged, destroyed, or otherwise become unfit for its appropriate use and purpose, to cause the same to be repaired, renewed, rebuilt, or replaced by property of equal value. These covenants were to be performed at the lessee's sole cost and expense. The agreements also provided that the lessee should have the right to make such additions and extensions to, and betterments and improvements of, the leased properties as it deemed necessary, for which it was to be reimbursed by the lessors. The leases became effective on June 2, 1926, and the lessee took over the leased properties on that day.

During the taxable years and 1930, the lessee retired 1,464 units of leased equipment, such as locomotives and freight train cars, having a depreciated book value as of June 2, 1926, as agreed upon by the lessee and the lessors, of $1,157,752.92. These retirements took place as follows: 1926, 81 units valued at $72,785.86; 1927, 757 units valued at $497,295.33; 1928, 389 units valued at $356,371.48; 1929, 164 units valued at $161.026.82; and 1930, 73 units valued at $70,273.43. Under the lease agreements, the lessee was required to replace these units with others of like values. As each equipment unit was retired, the lessee recorded its liability for replacement thereof on its books, in an amount equal to its depreciated book value at June 2, 1926, by a credit to the account of the lessor owning the unit. These retired units were replaced by the lessee with equipment furnished by the Illinois Central, as guarantor under the lease agreements, as follows: 577 units in 1929, and 29 units in 1930, a total of 606 units; but title thereto was not conveyed to the lessors at the times of replacement. The value of these replacement units on the lessee's books, which was cost less depreciation previously allowed, was $1,020,121.99, but for the purposes of the replacements, the lessee and lessors agreed upon values of $1,103,579.22 for the 1929 replacements, and $60,408.60 for the 1930 replacements, a total of $1,163,987.22.

In August, 1929, it was agreed that the lessee should convey to the lessors title to all such equipment replacements and to such other equipment as was necessary to replace all units of leased equipment that had been and would be retired up to December 31 of that year, in order that all such equipment might be brought immediately within the liens of the lessors' mortgages. By reason of the delay in agreeing upon the values and classes of replacement units that were to be conveyed to the lessors, the conveyances of titles were not formally made to the lessors until 1932. The accounting for the transfer of the replacement units was made on the books of the lessee and lessors in 1932.

The Board decided that the expenditures were not ordinary and necessary expenses within the meaning of paragraph 1, section 214 (a), of the Revenue Act of 1926, c. 27, 44 Stat. 9, 27,* but were for permanent additions and betterments to the leased properties, as defined in section 215 of the same act** and thereupon denied the

---

* Sec. 214. In computing net income there shall be allowed as deductions:

(a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. (26 U.S.C.A. § 23 and note.)

** Sec. 215. (a) In computing net income no deduction shall in any case be allowed in respect of—* * *

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. (26 U.S.C.A. § 24 and note.)

460

lessee the right to deduct the full amount in the respective tax years.

This matter has twice been before the Board of Tax Appeals, in the first instance apparently having been decided favorable to the contention of the petitioners in so far as the law applicable was concerned, but later the Board decided in favor of the respondent. In its first opinion of June 29, 1934, it found: "Under the lease agreements, the lessee was required immediately to replace all units of equipment retired from service. Therefore, as and when the lessee retired a unit of equipment, liability in praesenti, to make replacement, was created. The amount of the lessee's liability was measurable, under the terms of the lease agreements, by the value as of June 2, 1926, of the equipment units retired. Consequently, the lessee's liability to replace was fixed and determined at the time each unit of equipment was retired and was definitely ascertainable in amount. The lessee's books were kept on an accrual basis, and at the accounting for its liability to the lessors was made at the time the equipment units were retired. Under the circumstances the amount to be deducted from the lessee's income of any taxable year on account of its replacements of equipment is the aggregate value, as of June 2, 1926, of the equipment units retired during that particular taxable year. Cf. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. While the number of equipment units retired in each taxable year is shown, there is no evidence upon which we can determine the amount of the lessee's liability as to each of such taxable years. Accordingly, the issue must be resolved against the Petitioners."

Subsequently, on motion of the petitioners, the case was reopened so that petitioners might prove the exact amount of liability in each of the years in question. On March 4, 1936, the Board promulgated its second opinion stating: "Upon reconsideration of the entire record, we are now convinced that our earlier opinion is wrong in several respects and should be set aside. Accordingly, the following opinion is substituted for the earlier one promulgated on June 29, 1934."

And in which opinion the Board found: "The expenditures represented by these replacements are not 'ordinary and necessary expenses paid or incurred during the taxable year(s) in carrying on any trade or business', within the meaning of section 214 (a) (1) of the 1926 Act and section 23 (a) of the 1928 Act [26 U.S.C.A. § 23 and note] but were for permanent additions and betterments to the leased properties, such as would, if made by the owners of these properties, come within the provisions of section 215 (a) (2) of the 1926 Act and section 24 (a) (2) of the 1928 Act [26 U.S.C.A. § 24 and note] 'that no deduction shall in any case be allowed in respect of any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property.' 'They constituted, not upkeep, but investment; not maintenance or operating expenses, but capital, subject to annual allowances for exhaustion or depreciation.' Duffy v. Central Railroad Co., supra [268 U.S. 55, 45 S.Ct. 429, 69 L.Ed. 846]. The Petitioners' contention that they are deductible in computing the lessee's taxable net income, is, therefore, denied."

We are of the opinion the Board erred in the conclusion it finally reached and that petitioners were entitled to deduct from their income in each of said years the aggregate value as of the effective dates of the leases in question, the equipment units retired during each year, as accrued upon the books of the lessee company. The Board quotes from and apparently bases its opinion upon the case of Duffy v. Central R. R. Co., 268 U.S. 55, 45 S.Ct. 429, 430, 69 L.Ed. 846; but the facts in that case are quite dissimilar to those in the present situation. There the lease required the lessee "to acquire and pay for the interest of private owners in an old pier and to construct a new one in its place." Such expenditures by the lessee were not for the purpose of maintaining the corpus of the leased estate, but to increase its value by buying the interest of private owners in the old pier and then constructing a new one in its place. The court held (268 U.S. 55, at page 62, 45 S.Ct. 429, 430, 69 L.Ed. 846): "Clearly the expenditures were not 'expenses paid within the year in the maintenance and operation of its (respondent's) business and properties'; but were for additions and betterments of a permanent character, such as would, if made by an owner, come within the proviso in subdivision Second, 'that no deduction shall be allowed for any amount paid out

for new buildings, permanent improvements, or betterments made to increase the value of any property,' etc. . They were made, not to keep the properties going, but to create additions to them. They constituted, not upkeep, but investment; not maintenance or operating expenses, deductible under subdivision First, § 12 (a), but capital, subject to annual allowances for exhaustion or depreciation under subdivision Second."

True, there were items of expense involved in that case other than that made in the acquirement of the pier, but the opinion in the lower court (Central R. Co. v. Duffy [C.C.A.] 289 F. 354, 356) discloses that such expenditures were admitted by the taxpayer as having been made for additions and betterments to the leased property. In the present case the leases included some 2,300 units of equipment, a substantial number of which were retired each year and were replaced in order to keep the leased property in operation as a going concern. Such expense of replacing the retired units of equipment was necessarily made "to keep the properties going" and not "to create additions to them." They constituted not investment, but upkeep, which the lessee was obligated to perform by the terms of the lease, and was required so to do in order that it might continue the use of the property in the business for which it was acquired.

In Frank & Seder Co. v. Commissioner (C.C.A.) 44 F.(2d) 147, the court discusses a somewhat analogous situation. The taxpayer carried on its business in leased premises with the obligation to restore the property to its original condition at the end of the lease. Without waiting until that time it agreed to pay the lessor the sum of $25,000 in satisfaction of such obligation. The company kept its books on the accrual basis and charged their entire $25,000 as an expense of carrying on the business for that year, although payment was, in fact, made in several installments in different years. The Board of Tax Appeals held that the payment was a capital expenditure to be prorated over the life of the lease, but the Circuit Court of Appeals reversed the Board and found the item a necessary expense incurred in a taxable year in carrying on the business and was, therefore, an allowable deduction.

In Southern Ry. Co. v. Commissioner (C.C.A.) 74 F.(2d) 887, on page 890, in dealing with a similar situation, the court said: "Expenditures for repairs and replacements, therefore, when no greater than necessary to maintain the property of the railroad at the normal level of maintenance, merely counterbalance depreciation and are deductible from income, just as depreciation is deductible, in that they represent a necessary expense in the earning of income. The fact that a given repair or replacement remedies a condition needing repair in a preceding year is immaterial; for the end of the period in which the repair is made will show other items which as the result of operation over the period are in need of repair or replacement, and which must be repaired or replaced in succeeding periods. So long as the expenditure for this purpose does not exceed that which is necessary to preserve the normal level of maintenance, it is properly treated as an ordinary and necessary expense of the operation of the business, and is deductible from income as such."

It is contended by respondent that the language just quoted has been definitely limited by the more recent decision of the same court in Atlantic Coast Line R. R. Co. v. Commissioner (C.C.A.) 81 F.(2d) 309, certiorari denied 298 U.S. 656, 56 S.Ct. 676, 80 L.Ed. 1382, but we are unable to find any language in the latter opinion which sustains such contention. The court does find, and cites many authorities in support of the same, that, where property is leased for a long term of years under circumstances such as we have in the instant case, neither the lessee nor lessor is entitled to allowance for depreciation, because, as to the former, it has invested no capital in the property, and as to the latter, it has sustained no loss in view of the obligation of the lessee to maintain, repair, and renew. However, any doubt concerning this opinion is dispelled by reference to the decision of the Board of Tax Appeals which the Court of Appeals affirmed. Not only did the Board in that case allow the Atlantic Coast Line Railroad Company the expense of renewing the leased property where it was replaced in kind, but, in addition thereto, the Board allowed the Atlantic Coast Line the cost less depreciation of the leased property retired, not replaced in kind but used as an offset against addi-

tions and betterments. Among other things the Board in its opinion said, 31 B.T.A. 730, 739, 740: "We think that it is clear, therefore, that the amounts claimed by the petitioner lessee as deductions, as set out in the stipulation, represent the cost to it in part of the process of maintenance of the leased properties, for which it was not and will not be reimbursed. If not strictly a part of the cost of maintenance, the credits in question certainly represent cost to the lessees of carrying out their contract with the lessor, and were in effect payments made by the lessees to the lessor in lieu of their obligation to replace the retired property in kind or by other property of equal value. To the petitioner lessee these expenditures constituted rental paid for the use of the leased properties, and petitioner is entitled to deduct the same as current operating expense."

In Belt Ry. Co. v. Commissioner, 59 App.D.C. 137, 36 F.(2d) 541, certiorari denied Belt R. Co. v. Lucas, 281 U.S. 742, 50 S.Ct. 348, 74 L.Ed. 1155, relied upon by respondent, the court uses language which seems to sustain its position, which language is admittedly obiter dictum, but, even if not, seems to be in conflict with the weight of authority and contrary to what we believe is a reasonable and logical construction of the provisions of the statute involved. We have examined the other cases cited by respondent but find them not in point. Nor do we find anything in the Treasury regulations, relied upon, inconsistent with our conclusion. The Board of Tax Appeals allowed the expense of replacement of rail and track material on the theory, as we understand, that such expenditures are ordinary in the business in which the lessee is engaged, and are necessary because the lessee was required to make them in the performance of its covenants to keep up and maintain the properties. Must not the same be said of the expense of repairing, renewing, and replacing locomotives and cars? Certainly the lessee was under the same obligation to make such expenditures and it would seem they were just as necessary, and when the character of the business is considered, that they were ordinary as well.

The decision of the Board of Tax Appeals is reversed, with the directions to proceed in accordance with the views here expressed.