## COMMISSIONER OF INTERNAL REVENUE v. CARMAN.

## CARMAN v. COMMISSIONER OF INTERNAL REVENUE.
### No. 173, Docket 21809.

United States Court of Appeals
Second Circuit.

Argued March 14, 1951.

Decided May 23, 1951.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Helen Goodner and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for the Commissioner.

Whitman, Ransom, Coulson & Goetz, New York City, Robert E. Coulson, Harold F. Noneman and Charles S. Whitman, Jr., all of New York City, of counsel, for the taxpayer.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The Tax Court determined a deficiency in the income tax of William W. Carman for the year 1944. The Commissioner seeks review on the ground that the deficiency found was too small. The taxpayer's petition asserts that the court erred in finding any deficiency. The question presented is whether common stock and cash received by the taxpayer pursuant to a plan of reorganization is taxable on a capital gains basis or as ordinary income.

The facts as found by the Tax Court are reported in 13 T.C. 1029. They are not disputed and a brief summary will suffice for the present opinion. Prior to the year 1944 the taxpayer purchased $25,000 First Mortgage 5% bonds of the Western Pacific Railroad Company. At the dates of his purchases interest on the bonds was in default from September 1, 1933; he bought them "flat." In 1935 the Railroad Company filed a petition for reorganization under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and five years later a plan was approved by the district court. Consummation of the plan was delayed by litigation and it was not until December 29, 1944 that the taxpayer surrendered to the reorganization committee his old bonds and received in exchange therefor $10,000 of new income bonds, 150 shares of 5% preferred stock (par $100), 116¾ shares of common stock and cash of $5,672.25. The cash represented "adjustment payments" authorized by the district court because of delay in consummating the reorganization plan which had set January 1, 1939 as its "effective date." In his return for 1944, the taxpayer treated the transaction as falling within sections 112(b) (3) and 112(c) (1) of the Internal Revenue Code, 26 U.S.C.A. § 112 (b) (3), (c) (1), and computed his tax on a capital gains basis to the extent of the cash received. The Commissioner conceded that there had been a recapitalization of the Railroad Company which constituted a reorganization under section 112(g) of the Code, but asserted that the value of the common stock and two items of the "adjustment payments" were taxable as ordinary income. The Tax Court rejected his contention as to the common stock but sustained it as to the two cash items.

Section 112(b) (3) provides that no gain or loss shall be recognized if securities in a corporation which is a party to a reorganization are exchanged solely for stock or securities in such corporation. When the exchange includes money in addition to such stock or securities, section 112(c) (1) requires the gain to be recognized but in an amount not in excess of the money received. The Commissioner concedes that the exchange of the taxpayer's old bonds for new bonds and preferred stock is within § 112 (b) (3), but contends that the common stock is not because the plan of reorganization designated the common stock as distributable to holders of the old bonds for the unpaid interest thereon accrued up to January 1, 1939. The argument is that the claim for accrued interest was severable from the claim for the principal of the old bonds and is not a "security" exchanged for stock pursuant to a plan of reorganization. The contention is ingenious but unsound. The bondholder had a single claim for principal and interest; the bonds and their coupons were "securities" as defined in section 23(k) of the Code, 26 U.S.C.A. § 23(k). The exchange of these securities for new bonds, preferred stock and common stock meets precisely the conditions prescribed in § 112(b) (3). Had the plan of reorganization contained no explanation of how the amount of the new securities was arrived at, unquestionably no gain or loss would be recognized. We cannot believe that Congress intended the applicability of section

112(b) (3) to depend on whether the proponents of the plan chanced to explain the reasons which induced them to propose the exchange. We think that the rule as to the purchase and sale of bonds with interest in default tends to support our conclusion. When bonds in default are bought "flat," the price paid is not apportioned between principal and interest; and when they are sold the consideration received is set off against the purchase price to determine whether the investment resulted in gain or loss; no part of the sale price is regarded as taxable interest.[1] The consideration received on an exchange of the bonds for stock or securities would be similarly treated, had not § 112(b) (3) postponed recognition of the gain or loss. We agree with the Tax Court's disposition of the issue as to the common stock and see no occasion to add to it further. Koppers United Co. v. Commissioner of Internal Rev., 2 T.C.M. 87, is in accord.[2]

We pass now to the taxpayer's appeal. Because of delay in consummating the plan, the bankruptcy court ordered cash payments to be made in the following amounts: with each income bond 22½% of the principal amount thereof; with each share of preferred stock $15.81; and with each share of

common stock $9.00. Pursuant thereto the taxpayer received with his new bonds $2250; with his preferred stock $2371.50; with his common stock $1050.75—a total of $5672.25. The Tax Court held the $2250 item and the $1050.75 item to be taxable as ordinary income.[3]

The Commissioner argues that although the new bonds were not issued until December 29, 1944 they must be treated as if they had been issued on January 1, 1939 —the "effective date" postulated in the reorganization plan—and therefore the cash item of $2250 received by the taxpayer with the new bonds "was in effect payment of interest at the rate of 4½ per cent" on the new bonds. The Tax Court accepted this contention for reasons which are not clear to us. Its opinion states that it must look to the effective date "to determine which securities were to be included in the exchange and, therefore, which securities come within the provisions of the Code sections involved." From this premise and without further expanding its reasons the Tax Court apparently concluded that the adjustment payments made after the effective date of the plan were not made "in pursuance of the plan of reorganization,"[4] as required by sections 112(b) (3) and (c) (1).

1. Clyde C. Pierce Corp. v. Commissioner of Internal Rev., 5 Cir., 120 F.2d 206; Lloyd v. Commissioner of Internal Rev., 3 Cir., 154 F.2d 643; Hewitt v. Commissioner, 30 B.T.A. 962; R. O. Holton & Co., Inc., v. Commissioner, 44 B.T.A. 202; Noll v. Commissioner, 43 B.T.A. 496. See also Anne T. Simpson, 11 B. T.A.M. 129, 130.

2. See also as to accrued dividends on preferred stock, Morainville v. Commissioner, 6 Cir., 135 F.2d 201; South Atlantic Steamship Line v. Commissioner, 42 B.T.A. 705; Ross W. Judson, 10 B. T.A.M. 1400.

3. For some reason not disclosed in the record, the Commissioner did not contend that the cash item received with the preferred stock was taxable as ordinary income.

4. The quoted words do not differ materially from the predecessor phrase "in connection with the reorganization". Section 202(b) of the Revenue Act of 1918, 40 Stat. 1060, from which section 112 (b) (3) was ultimately derived, provided

that no gain or loss was to be recognized "when in connection with the reorganization * * * of a corporation a person receives in place of stock or securities owned by him new stock or securities * * *." For purposes material to the present discussion the Revenue Act of 1921 left the legal effect of section 202(b) unchanged. See section 202(c) (2), 42 Stat. 230; Sen.Rep.No. 275, 67th Cong., 1st Sess., 11(1921); H. R.Rep.No.350, 67th Cong., 1st Sess., 10 (1921); H.R.Rep.No.486, 67th Cong., 1st Sess., 17 (1921). Section 203(b) (2) of the Revenue Act of 1924, 43 Stat. 256, which is identical to section 112(b) (3), was derived from section 202(c) (2) of the 1921 Act, and, except for changes in phrasing described by the committee reports as "minor," did not change the law as it then existed. H. R.Rep.No.179, 68th Cong., 1st Sess., 13 (1924); Sen.Rep. 398, 68th Cong., 1st Sess., 14(1924). One of the "minor" phrase changes adopted was the words "in pursuance of the plan of reorganization."

Section 112(a) clearly refers to the date of the exchange as the date which determines whether gain or loss shall be recognized. To take a hypothetical date which is not the actual date of the exchange disregards the "firmly established principle of tax law that the ordinary meaning of terms is persuasive of their statutory meaning." [5] Under the plain terms of sections 112(b) (3) and 112(c) (1) the adjustment payments were "money" received in an exchange which met the requirements of those sections. We see no justification for modifying the statutory language by the fiction of relating back the date of actual receipt to an earlier day selected by the Interstate Commerce Commission as the "effective date" of the plan.[6] No case has come to our attention which supports such a modification of the statutory mandate. And the complexities which such a rule may create are illustrated by the fact that $5,000 of the old bonds which the taxpayer exchanged for the new securities were not purchased by the taxpayer until April 29, 1940. It would seem that any interest theoretically accrued on the new bonds from January 1, 1939 to April 29, 1940 was included in the purchase price of the old bonds and when paid should be deemed a return of invested capital.[7] For the foregoing reasons we think the Tax Court was in error in taxing as ordinary income the $2250 item.

■■■ The same reasoning would require reversal as to the cash item of $1050.-75 received as an adjustment payment on the common stock. As to this item, however, the Commissioner has an alternative argument to support the Tax Court's ruling. He contends that the sum paid on the common stock was made taxable by section 112(c) (2) because it "has the effect of the distribution of a taxable dividend". If in fact the money was paid from earnings and profits, then it would be taxable as a dividend.[8] Since "Recapitalization does not alter the 'effect' ",[9] it would seem to be immaterial that the common stock for which the money was paid did not come into existence until after the profits were earned. In its opinion the Tax Court did not discuss the applicability of section 112(c) (2), and it made no finding as to the source of payment. Its findings of fact merely recite certain portions of the petition for payment submitted by the reorganization committee to the reorganization court. The petition asserts that "the properties of the debtor * * * have shown substantial earnings which would have been available for interest and dividends," [10] but we think that the Tax Court's recital of this allegation cannot be taken as equivalent to a finding that there were in fact earnings and profits.[11] Since there is no finding which would support the Commissioner's alternative contention, and no evidence was presented by him to support such a finding, the ruling that the item paid with the common stock was a dividend is not supportable.

The decision of the Tax Court is affirmed on the Commissioner's appeal; the decision is reversed on the taxpayer's appeal.

5. Commissioner of Internal Revenue v. Korell, 339 U.S. 619, 627, 70 S.Ct. 905, 909, 94 L.Ed. 1108.

6. The so-called effective date, January 1, 1939, was already passed when the Commission promulgated the plan on June 21, 1939.

7. See cases cited in note 1, supra.

8. Section 115(a).

9. See Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 292, 65 S.Ct. 1157, 1161, 89 L.Ed. 1611.

10. Par. 8 of the Petition, 13 T.C. 1029, 1032.

11. Allegations made by third persons in another proceeding are not competent as evidentiary admissions of the taxpayer unless it is shown (and it was not) that he authorized or adopted the statement of or was in some way identified in interest with the persons by whom the allegation was made. See 4 Wigmore, Evidence, 3d ed., § 1062a et seq.