ESTATE OF WILLIAM BERNSTEIN, DECEASED, EDWARD BERNSTEIN, EXECUTOR, AND SELMA BERNSTEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41976. Filed September 30, 1954.

*Sidney Gelfand*, for the petitioners.
*Donald J. Fortman, Esq.*, for the respondent.

#### OPINION.

BAAR, *Judge:* The Commissioner determined a deficiency in income tax of William Bernstein and his wife, Selma Bernstein, for the year 1949 in the amount of $103.84 with respect to items not here involved. No error has been alleged except the failure of the Commissioner to exclude from income certain interest which was reported as taxable. The petitioners contend that they are entitled to a refund of approximately $4,500 on this ground.

William Bernstein died subsequent to the filing of the petition herein, and by order of this Court dated May 6, 1953, the executor of his estate, Edward Bernstein, was substituted as a petitioner.

The major question presented for decision is whether so-called "noninterest bearing interest certificates" and cash received in 1949 upon an exchange of bonds in a reorganization should be considered interest income to the extent of the unpaid interest accrued subsequent to the date of purchase of the bonds, or whether such certificates and cash should be taxable only to the extent provided by sections 112 (b) (3) and 112 (c) (1) of the Internal Revenue Code of 1939. A subsidiary question is whether such certificates were "securities" within the meaning of section 112 (b) (3) or "other property" under section 112 (c) (1).

All of the facts have been stipulated and are found accordingly.

The petitioners were, on August 1, 1949, the owners of $130,000 face value of the 5 per cent general mortgage bonds of the Central Railroad Company of New Jersey, due July 1, 1987. On August 1, 1949, a change in the capital structure of the railroad company which, according to the stipulation of the parties, constituted a reorganization within the meaning of section 112 (g) (1) (E) of the 1939 Code, became binding on all security holders.

At that time there was accrued and unpaid interest due upon the bonds both for periods prior to the various dates of purchase by the petitioners and for periods subsequent thereto. In 1949 the bonds were surrendered pursuant to the plan of reorganization and the petitioners received in exchange therefor the following:

| Received | For each $1,000 bond surrendered | | Total | |
|---|---|---|---|---|
| | Number | Face or par value | Number | Face or par value |
| (a) 3¼ per cent general mortgage bonds, due July 1, 1987 | 1 | $1,000 | 130 | $130,000 |
| (b) Shares of class A capital stock ($50 par value) | 4 | 200 | 520 | 26,000 |
| "Plus for interest" from January 1, 1944, to June 30, 1949: | | | | |
| (c) Non-interest bearing interest certificates | 1 | 225 | 130 | 29,250 |
| (d) Cash | | 50 | | 6,500 |
| | | $1,475 | | $191,750 |

The parties have stipulated that "the use of the words 'plus for interest' shall not be deemed to be an admission as to the taxability of items (c) and (d) as interest income," and that items (c) and (d) could not have been received separately and apart from items (a) and (b), but all items were received as a part of a unitary plan of reorganization.

On the date of receipt the fair market value of each $225 non-interest bearing interest certificate was $115.875 and the aggregate fair market value of the certificates received by the petitioners was $15,063.75.

The total of $21,563.75 received by the petitioner in cash and fair market value of interest certificates represented $12,234.78 of interest accrued prior to the purchases by the petitioners and $9,328.97 of interest accrued subsequent thereto.

The petitioners reported the amount of $9,328.97 as interest income on their calendar year 1949 joint Federal income tax return filed with the collector of internal revenue for the third district of New York. They now allege that the Commissioner was in error in failing to exclude this amount from the taxable income reported on their return, and ask this Court to determine an overpayment of tax on that ground.

Respondent contends that the cash and the fair market value of the interest certificates constitute ordinary interest income, to the extent that they represent interest accrued subsequent to the dates of purchase of the bonds by the petitioners. He points out that under the plan of reorganization the cash and the interest certificates were set apart to satisfy the unpaid interest on the bonds which were surrendered, that the certificates themselves were designated as *interest* certificates and that the cash and the face amount of such certificates received by the petitioners were equal to the amount of the unpaid interest on the bonds surrendered by them.

In *Carman* v. *Commissioner*, (C. A. 2, 1951) 189 F. 2d 363, affirming on this issue 13 T. C. 1029, the taxpayer held first mortgage bonds of Western Pacific Railroad Company purchased at a time when the interest thereon had been in default for several years. These bonds were exchanged, pursuant to a reorganization of the railroad company under section 77 of the Bankruptcy Act, for the following securities: New income bonds, preferred stock, common stock designated by the plan as being for unpaid interest, and cash as adjustment payments for the delay in the consummation of the reorganization plan.

The Commissioner contended that the fair market value of the common stock constituted ordinary income to the extent that it was attributable to interest which had accrued but had remained unpaid on the old bonds subsequent to their purchase by the taxpayer. It was held, however, that the claim for unpaid interest was not severable from the principal debt and that each bond together with the interest due on it constituted a "security" within the meaning of section 112 (b) (3) of the Code. It was therefore held that the common stock was received not as interest income but merely as part of the consideration received in exchange for the old bonds surrendered pursuant to a plan of reorganization. The Court of Appeals for the Second Circuit stated (189 F. 2d at pp. 364–365):

The argument is that the claim for accrued interest was severable from the claim for the principal of the old bonds and is not a "security" exchanged for stock pursuant to a plan of reorganization. The contention is ingenious but unsound. The bondholder had a single claim for principal and interest; the bonds and their coupons were "securities" as defined in section 23 (k) of the Code, 26 U. S. C. A. § 23 (k). The exchange of these securities for new bonds, preferred stock and common stock meets precisely the conditions prescribed in § 112 (b) (3). Had the plan of reorganization contained no explanation of how the amount of the new securities was arrived at, unquestionably no gain or loss would be recognized. We cannot believe that Congress intended the applicability of section 112 (b) (3) to depend on whether the proponents of the plan chanced to explain the reasons which induced them to propose the exchange. * * *

A similar holding was made by this Court in *Morris Shanis*, 19 T. C. 641 (1953), affirmed on other grounds (C. A. 3, 1954) 213 F. 2d 151, wherein we declined to reconsider our decision in the *Carman* case.

In view of the foregoing authority, there would seem to be no merit to the respondent's argument that the claim for interest must be considered apart from the principal debt. However, the respondent attempts to distinguish the *Carman* and *Shanis* cases from the one at bar on the ground that in the cited cases the taxpayers received common stock or other securities in payment of their claims for accrued bond interest, whereas herein the petitioners received cash and interest certificates which the respondent argues were not securities. He urges that the certificates did not represent an interest in the enterprise, as would bonds, stocks, or other securities, but constituted in fact the payment of interest—current payment to the extent of their fair market value and deferred payment as to the remainder of their face amount.

We do not consider this to be a valid ground of distinction. The decisive question is whether or not the cash and interest certificates were received in an exchange of securities pursuant to a plan of reorganization. If they were, such cash or other property as might have been received in addition to the stock or securities governed by section 112 (b) (3) would be taxable only under the provisions of section 112 (c) (1) and not as interest income.

We can not agree with the respondent's contention that only the new bonds and the stock were received in exchange for the old bonds, and that the cash and the interest certificates were separately received as payment of the accrued interest. According to the stipulation of the parties and in conformity with the nature of the reorganization, the exchange was a single integrated transaction and the interest certificates and cash could not have been received except upon the exchange of the old bonds. It is not material that the unpaid interest obligation is mentioned as the reason why the cash and interest certificates are included in the consideration for the exchange.

The parties have stipulated and we have found that the change of capital structure of the Central Railroad Company of New Jersey constituted a reorganization within the meaning of section 112 (g) (1) (E) of the 1939 Code. There is no question that under the previously cited decisions the bonds surrendered by the petitioners, including the claims for accrued interest, constituted securities within the meaning of section 112 (b) (3). If the interest certificates received by the petitioners were also "securities" within the meaning of that section, then no gain or loss would be recognized except to

the extent of the cash. If the interest certificates were not securities within the meaning of section 112 (b) (3), then such certificates and the cash were "other property or money" and were taxable under the provisions of section 112 (c) (1).

We therefore hold that the receipt by the petitioners of non-interest bearing interest certificates and cash in settlement of their claims for unpaid interest on bonds surrendered in a tax-free exchange did not result in the receipt of interest income.

This conclusion is in accord with the recent decision in *Dunbar* v. *United States*, (E. D. Mo., Aug. 4, 1953). The taxpayer in that case exchanged bonds of the St. Louis-San Francisco Railway Company on which interest was in default for new securities and cash pursuant to the same plan of reorganization under section 77 of the Bankruptcy Act which was involved in the *Shanis* case, *supra*. The cash distribution was designated in the consummation order and in the final decree of the District Court as allocable to interest accrued and unpaid for the years 1934 to 1936, during which time the taxpayer owned some of the bonds surrendered in the exchange. The plan made no allocation of the new securities received as between the principal and the balance of interest due on the old bonds. It was held on the authority of the *Carman* and *Shanis* cases that no part of the new securities constituted taxable income and that the cash received was taxable only as capital gain and not as ordinary income.

If the receipt of cash in settlement of claims for accrued and unpaid interest upon bonds surrendered pursuant to a plan of reorganization is not to be regarded as the receipt of ordinary interest income, then *a fortiori*, the receipt of a mere obligation to pay a sum in settlement of outstanding claims for interest, however such obligation be designated, cannot be deemed the receipt of interest income. See also *Mary B. Thurlow* v. *United States*, (N. D. Ala., July 1, 1954); *Oscar G. Thurlow* v. *United States*, (N. D. Ala., July 1, 1954); *Grey* v. *United States*, (D. Utah, Dec. 14, 1953).

The question remains, however, whether the interest certificates are "securities" within the meaning of section 112 (b) (3) or "other property" under the provisions of section 112 (c) (1). Respondent has taken the position that they are not securities. The certificates recite that they are part of an issue limited in aggregate principal amount to $10,739,925 and secured by an indenture of mortgage or deed of trust dated July 1, 1887, as supplemented and amended by 6 supplemental indentures, the last of which was dated July 1, 1949. The certificates further recite that they are payable "out of certain portions of available net income," as provided in the indenture.

The certificates also state that the indenture, as supplemented, provided for the issuance and the securing of general mortgage bonds of

the company, unlimited in aggregate principal amount. Upon any distribution of proceeds of sale of the mortgaged and pledged property, payment of the interest certificates was subordinated to the prior payment in full of the principal and interest on any such bonds. The company reserved the right to redeem the interest certificates in whole or in part at any time.

We have recently had occasion in *Camp Wolters Enterprises, Inc.*, 22 T. C. 737, to consider the definition of the term "securities" as used in section 112 (b) (5) transactions. We there held that the words "stocks or securities" have the same meaning when used in section 112 (b) (5) as they do when used in sections 112 (b) (3) and 112 (b) (4). After noting the authorities on the point, we stated:

The test as to whether notes are securities is not a mechanical determination of the time period of the note. Though time is an important factor, the controlling consideration is an over-all evaluation of the nature of the debt, degree of participation and continuing interest in the business, the extent of proprietary interest compared with the similarity of the note to a cash payment, the purpose of the advances, etc. It is not necessary for the debt obligation to be the equivalent of stock since section 112 (b) (5) specifically includes both "stock" and "securities."

In the *Camp Wolters* case 89 nonnegotiable unsecured installment notes were received in exchange for certain contract and restoration rights. These interest bearing notes became due between the fifth and ninth years after issuance, but no payment whatsoever could be made on them until a certain bank loan or any renewal, extension, or refinancing of such loan had been completely liquidated. In concluding that these notes were "securities" we stated:

It seems clear that the noteholders were assuming a substantial risk of petitioner's enterprise, and on the date of issuance were inextricably and indefinitely tied up with the success of the venture, in some respects similar to stockholders. As a matter of fact, all 89 notes were redeemed within 2 years, but we must examine the notes as of the date of issuance. * * *

See also *Globe-News Publishing Co.*, 3 T. C. 1199 (1944), wherein we held that dividend scrip issued in satisfaction of accrued and accumulated dividends on preferred stock pursuant to a plan of recapitalization were securities.

Upon examining the terms of the interest certificates in the instant case in the light of the test laid down in the *Camp Wolters* case, we note that the certificates cannot be considered short-term obligations since their payment is conditioned upon the availability of net income. While the certificates were issued in partial satisfaction of a current obligation to pay accrued interest, they represented merely a means of deferring the payment of such obligation until funds were obtained, as an integral part of a unitary plan to reorganize the capital structure of the corporation. Since the certificates were payable only

out of net income and were subordinate to the payment of the principal and interest on general mortgage bonds, which might be issued in unlimited amount, they were clearly not the equivalent of or even similar to a cash payment. Indeed, the interest certificate holders, just as the noteholders in the *Camp Wolters* case, were "inextricably and indefinitely tied up with the success of the venture" and were subjected to a substantial risk of the enterprise.

We therefore hold that the non-interest bearing interest certificates received by the petitioners upon the reorganization of the Central Railroad Company of New Jersey were "securities" within the meaning of section 112 (b) (3) of the 1939 Code and that no gain or loss was recognizable with respect to their receipt.

Reviewed by the Court.

*Decision will be entered under Rule 50.*