UNITED GAS IMPROVEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39315.    Filed October 31, 1955.

*Leonard A. Spalding, Jr., Esq.,* and *John A. Day, Esq.,* for the petitioner.
*Stephen P. Cadden, Esq.,* for the respondent.

### OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in income tax of petitioner for the taxable year 1947 in the sum of $711.20, and 1948 in the sum of $242,058.95. The petitioner seeks a determination that there is no deficiency but overpayments instead.

Petitioner, a Pennsylvania corporation, holding company, with its principal place of business in Philadelphia, Pennsylvania, filed its consolidated Federal income tax returns for the years 1947 and 1948 with the then collector of internal revenue for the first district of Pennsylvania at Philadelphia.

The facts were all stipulated and are found accordingly. The parties are agreed there are but two issues remaining in the case: (1) Whether a gain should be recognized where a debenture, together with accrued interest, is exchanged in a section 112 (g) reorganization for new securities, and (2) whether payments made under a guaranty contract arising out of a stock purchase plan are deductible as losses or ordinary and necessary business expenses, or nondeductible as a capital expenditure.

On December 19, 1906, petitioner, a holding company, became the owner of certain 4 per cent debentures of the Consolidated Railway Company at a total cost of $873,240. The debentures were not in default as to interest. On September 18, 1947, pursuant to the terms of

a plan of reorganization of the New York, New Haven & Hartford Railroad Company, under section 77 of the Bankruptcy Act, petitioner surrendered the said debentures. The interest then in default on such debentures amounted to $149,370. Petitioner received in return for the old securities new securities having a fair market value of $528,531.60 and cash in the sum of $45,960. On June 1, 1948, respondent issued a ruling with respect to the taxable status of said reorganization and, pursuant thereto, petitioner reported the sum of $66,091.97 for 1947 as taxable interest income and now claims this sum as part of its refund claim.

Very little need be said in answer to this first issue. The petitioner is entitled to the decision on this point. We held in *William W. Carman*, 13 T. C. 1029, affd. 189 F. 2d 363, that a claim for interest is an integral part of a bond or other evidence of indebtedness and that both the principal debt and the interest may be deemed a "security" within the meaning of section 112 (b) (3) of the 1939 Code; no gain would be realized where a debenture, together with accrued interest, was exchanged in a section 112 (g) reorganization for new securities. Respondent admits the rule of the *Carman* case supports the petitioner but states he does not agree with the decision or the cases that follow it. The *Carman* case was followed in *McDonald* v. *Commissioner*, 217 F. 2d 475, *Morris Shanis*, 19 T. C. 641, affirmed on other issues 213 F. 2d 151, and in *Estate of William Bernstein*, 22 T. C. 1364. Respondent cites no authority, and in fact makes no argument, except to say the *Carman* case and the cases that follow it have been "incorrectly decided as a matter of law." We adhere to the opinion in the *Carman* case for the reasons set forth therein in both the opinion of this Court and the opinion of the Court of Appeals for the Second Circuit. The first issue is decided in favor of petitioner.

The facts with respect to the second question raised by petitioner relate to a guaranty agreement and the payments made pursuant thereto. In 1926 a holding company known as the Connecticut Gas & Coke Securities Company, herein called Securities Company, was organized. It was organized at the instance of the Koppers Company, herein called Koppers, as a holding company for various operating utility companies. The proposed capitalization of Securities Company was 200,000 shares of no-par nonvoting, cumulative preferred stock, and 300,000 shares, no-par voting common stock. The preferred stock was entitled to a cumulative preferred dividend of $3 per share. On or about September 1, 1926, Koppers made a written offer for 200,000 shares of the common stock of Securities Company agreeing to transfer in exchange stock of certain operating utilities and further agreeing "to guarantee the dividends on the preferred stock of the holding company (Securities Company) for a period of 25 years." The offer was accepted as of October 1, 1926, and the exchange of

stock was made and the terms of the guaranty were endorsed on the certificates of the preferred stock issued by Securities Company.

We need not follow the corporate maneuverings or the name changes in Koppers Company that occurred in the next few months. It is enough to say that on July 11, 1927, the petitioner holding company acquired Koppers' common stock in Securities (204,481 shares) under the terms of a written agreement between Koppers and petitioner wherein petitioner gave in exchange certain shares of stock and wherein petitioner agreed to "indemnify and save Koppers harmless on account of its above recited guarantee of dividends on the preferred stock of Securities." At first one of petitioner's subsidiaries was substituted for Koppers on the guaranty. Later, on January 11, 1935, by a supplemental written agreement between petitioner and Koppers Company, petitioner was substituted in place of its subsidiary on the guaranty. The next year, 1936, liability began to develop on the guaranty obligation. It was stipulated that, from March 9, 1936, through September 30, 1947, petitioner transferred to Securities Company amounts totaling $1,376,233.66 ($69,648.95 of the aforesaid amount being paid in 1947), all of which were used by Securities Company to pay dividends on its preferred stock.

On May 6, 1947, petitioner, a registered holding company under the Public Utility Holding Company Act of 1935, 15 U. S. C. A. section 79, herein called the Act, and its subsidiary holding company, Securities Company, filed with the Securities and Exchange Commission, hereinafter called the Commission, a certain plan of divorcement pursuant to section 11 (e) of the Act. On December 9, 1947, the Commission approved the plan and on January 19, 1948, the plan was approved by the United States District Court for the District of Connecticut, and the parties ordered to carry out its terms. The plan called for petitioner to deliver cash and securities to Securities Company in extinguishment of its future liability under the guaranty contract which ran until 1951. The cash and securities petitioner was to deliver had a market value on January 19, 1948, of $605,147.38. They were delivered by petitioner in 1948 and taken as a deduction by petitioner in its 1948 consolidated income tax return. Respondent in his notice of deficiency disallowed the claimed deduction.

Petitioner makes certain general and specific claims based upon the above fact situation. Its general claim is, it was entitled to a deduction, either as a loss or expense, of the amounts it had to pay Securities Company, pursuant to its guaranty of the preferred stock dividends. Respondent's position is that the guaranty was given as part of the consideration for Securities Company common stock; that the payments made under the guaranty were part of the cost to peti-

tioner of Securities Company common stock and are, therefore, not allowable as deductions for bad debts or expenses.

The case is ruled by *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730, 745–747, affd. 81 F. 2d 309, certiorari denied 298 U. S. 656. There the Atlantic Coast Line Railroad Company received the entire issue of A. B. & C. Railroad Company common stock, and in return therefor gave cash and a guaranty of A. B. & C's. preferred stock dividend. Atlantic claimed deductions for the sums it had to pay in compliance with its guaranty agreement. We held, at page 745:

we think the conclusion is justified that petitioner's agreement to guarantee the payment of the dividends on the preferred stock of the A. B. & C. was a part of the consideration in exchange for which it received the common stock. * * * The payments made by the petitioner on its guaranty, then, must be regarded as a part of the consideration paid for the common stock, and are capital expenditures. * * *

The opinion of this Court in the *Atlantic Coast Line* case was affirmed by the Court of Appeals for the Fourth Circuit in this language, 81 F. 2d, at page 311:

we are of the opinion that the payments made by the Coast Line under its guaranty were part of the consideration paid by it for the common stock and were therefore capital expenditures rather than losses or ordinary and necessary business expenditures.

Both opinions above cite and discuss *Newark Milk & Cream Co.*, 10 B. T. A. 683, affd. 34 F. 2d 854, and our opinion in the *Atlantic Coast Line* case cites *New England Power Co.*, 25 B. T. A. 196. The last-cited case presented a somewhat different question, for there the Commissioner was contending such payments made by the parent corporation to its subsidiary, pursuant to the parent's guaranty of the subsidiary's preferred stock dividends, constituted income to the subsidiary. We held the payments did not constitute income and in the course of the opinion we called attention to the regulation which had long been in effect and is now (under the 1939 Code), Regulations 118, section 39.24 (a)–2, providing:

A holding company which guarantees dividends at a specified rate on the stock of a subsidiary corporation for the purpose of securing new capital for the subsidiary and increasing the value of its stock holdings in the subsidiary may not deduct amounts paid in carrying out this guaranty in computing its net income, but such payments may be added to the cost of its stock in the subsidiary.

The only distinction which petitioner makes between its situation and the situation present in the *Atlantic Coast Line* case is that in the latter case the parent corporation held all of the common stock in the subsidiary and here it only held about 70 per cent of the common stock in the subsidiary. Petitioner does not argue why this difference should lead to a different ruling. We see no material distinction. As stated at the outset, petitioner's general contention is ruled by the

*Atlantic Coast Line* case. The Commissioner was right in treating the sums paid pursuant to the guaranty as capital expenditures.

Petitioner singles out, for separate discussion, the payment made under the guaranty during 1947 and the payment made, or rather the securities and cash transferred to Securities Company, in final liquidation and discharge of petitioner's future obligation under its agreement of guaranty.

Petitioner argues that in 1947 its right to reimbursement, for payments made pursuant to the guaranty, was worthless. And, petitioner argues, the payments made under such circumstances, were, for income tax purposes, either losses or expenses, as soon as they were made. Petitioner cites a number of cases where taxpayers were entitled to deduct as an expense or loss, payments made under a contract of guaranty when it was apparent there was no hope of reimbursement. The authorities are not in point for in none of them was the guaranty given as a part of the purchase price for a capital investment. Here the guaranty of dividends was originally given by Koppers Company as a means of acquiring the common stock of Securities Company, a capital investment. It is admitted petitioner stands in the shoes of Koppers Company. Any and all payments made under the guaranty contract were made under an obligation assumed as part of the purchase price of the common stock of Securities Company. This is true as to the payments made before 1947, the payment made during 1947, and the payment made in 1948 to extinguish future liability under the guaranty contract. They were all payments made under the contract by which the common stock was purchased. They are no less payments under the contract in 1947 and 1948 because all chance of reimbursement was gone by then. Whether there was chance of reimbursement or not was immaterial. Nondeductibility results, as said by the Circuit Court in the *Atlantic Coast Line* case, because "payments made under [the] guaranty were * * * capital expenditures rather than losses or ordinary and necessary business expenditures."

*Decision will be entered under Rule 50.*