The Bessemer Limestone and Cement Company v. Commissioner.
Bessemer Limestone & Cement Co. v. Commissioner
Docket No. 21667.
United States Tax Court
T.C. Memo 1956-250; 1956 Tax Ct. Memo LEXIS 44; 15 T.C.M. (CCH) 1277; T.C.M. (RIA) 56250; November 13, 1956
*44 Petitioner received assets in an exchange incident to a 77-B reorganization pursuant to which petitioner was revived to take over and continue the business of The Bessemer Limestone and Cement Company, a Delaware corporation, which transaction constituted a tax-free exchange pursuant to section 112(b)(5) of the Revenue Act of 1934. Held: (1) This Court is without jurisdiction to consider petitioner's income tax liability for 1942 as respondent determined no deficiency in such tax for that year. (2) Similarly, the issue raised by petitioner with respect to respondent's alleged failure to allow a 10 per cent postwar credit in determining the deficiency in excess profits tax for 1942 is a matter without the jurisdiction of this Court. California Vegetable Concentrates, Inc., 10 T.C. 1158. (3) Petitioner's basis in the assets acquired from the Delaware corporation is the aggregate basis of the stockholders and creditors of Delaware, participating in the plan of reorganization, for their stock and securities in that company. Gage Brothers & Co., 13 T.C. 472. Aaron Holman, Esq., for the petitioner. James A. Scott, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion *45 BRUCE, Judge: Respondent has determined deficiencies in income, excess profits, and declared value excess profits taxes of petitioner as follows: Deficiency
Income Tax
1941
$ 4,800.03
Excess Profits Tax
1941
30,251.38
1942
97,703.45
Declared Value Ex-
cess-Profits Tax
1941
3,231.77
In addition to the foregoing, respondent alternatively claims by an amendment to his answer an increased deficiency in income tax for 1941, if any, which results from the reduction, if any, "of excess profits tax by the allowance, if any, of unused excess profits credit carry over or carry backs or by reason of any other adjustments called for by the Court's opinion which have the effect of increasing income tax net income * * *" Petitioner claims overassessments in income and excess profits taxes in the amounts of $34,583.68 and $90,752.93 for 1941 and 1942, respectively. Petitioner also claims refunds for deposits (which included interest) made in respect of the deficiencies determined for 1941 and 1942 in the amounts of $53,858.67 and $110,132.93, respectively. Respondent in his notice of deficiency also determined an overassessment in income tax for 1942 in the amount of $15,932.66. Respondent now urges that this *46 Court has no jurisdiction in this proceeding to redetermine the income tax liability for the year 1942. By virtue of uncontested adjustments and issues which petitioner has either conceded or abandoned, a computation under Rule 50 is necessary. This proceeding involves, in addition to certain issues raised by amended pleadings, questions which were severed and hearing thereon postponed pending a hearing and ruling by this Court as to whether petitioner acquired certain assets in 1935 in a nontaxable reorganization or exchange. Our findings of fact and opinion with respect to that question are reported as The Bessemer Limestone and Cement Company, 22 T.C. 303. The principal issue now presented is the basis to petitioner of the assets received by it in an exchange incident to a 77-B reorganization pursuant to which petitioner was revived to take over and continue the business of The Bessemer Limestone and Cement Company, a Delaware corporation, and which transaction constituted a tax-free exchange pursuant to section 112(b)(5) of the Revenue Act of 1934. All other questions, save those relating to petitioner's income tax liability for 1942 and the allowance of a postwar credit with *47 respect to petitioner's excess profits tax for 1942, are initially dependent upon the primary question, the solution of which will serve as a basis for the determination of the remaining issues. Findings of Fact All of the facts which were stipulated are so found. Additional facts were adduced from exhibits received at the hearing, which exhibits are included herein by this reference. Our findings of fact and opinion upon the severed issue reported at 22 T.C. 303 are also made a part hereof. Petitioner is an Ohio corporation with its principal place of business at Youngstown, Ohio. It kept its books and filed its income and excess profits tax returns on an accrual basis for the years 1941 and 1942. Its returns for the years here involved were filed with the collector of internal revenue for the eighteenth district of Ohio. From the date of its organization in 1919 until February 1, 1927 petitioner engaged in the limestone and cement business. On or about the latter date petitioner's assets were indirectly transferred to The Bessemer Limestone and Cement Company, a Delaware corporation (hereinafter called Delaware). Thereafter petitioner did not dissolve but remained dormant and inactive *48 while Delaware continued the operation of its former business. During the depression years Delaware experienced financial difficulties. Around August 1, 1932, Delaware defaulted on certain payments due on its bonded indebtedness and thereafter remained in default. A bondholders' protective committee representing the owners of more than three-fourths of Delaware's outstanding bonds was organized in August 1932. A trustee under the mortgage indenture declared the principal of the bonds to be due and payable on or about April 30, 1934 and then filed foreclosure actions against Delaware on June 6, 1934 in the United States District Court for the Northern District of Ohio, Eastern Division, and the United States District Court for the Western District of Pennsylvania. On December 10, 1934, Delaware filed a petition in the United States District Court for the Northern District of Ohio, Eastern Division, for reorganization under section 77-B of the National Bankruptcy Act, alleging that it was unable to meet its debts as they matured. Delaware's balance sheet as of the close of business on December 9, 1934, listed assets in the amount of $4,733,401.88 which included, inter alia, $3,635,537.62 *49 in plant, equipment, and real estate and $235,003.45 in advanced royalties. Its liabilities to creditors were recorded at $2,850,561.12. In addition it was contingently liable on notes payable of the Goff-Kirby Co., Cleveland, Ohio, in the amount of $350,000 and it had unpaid cumulative dividends on Class "A" stock to January 1, 1935, in the amount of $525,000. In the proceedings which followed the filing of the petition a plan of reorganization was conceived and carried out under the guidance of the District Court. Pursuant to this plan petitioner was revived to be the transferee of Delaware's assets and the successor to its business. On July 1, 1935, pursuant to the decree of the District Court, Delaware transferred all of its assets to the petitioner by warranty deeds. Thereafter and pursuant to the plan of reorganization petitioner issued its stock (both preferred and common) and securities in designated amounts to Delaware bondholders and note creditors in exchange for their evidences of indebtedness and it issued common stock in agreed upon allotments to the holders of Delaware's Class "A" and Class "B" stock in exchange for their respective shares. Delaware had stock issued *50 and outstanding and was indebted to bondholders and note creditors as of June 30, 1935, as follows: Interest ac-
crued as of
Principal
Jan. 1, 1935
Shares
Bondholders
$2,152,400.00
$408,059.15
Note Creditors
251,684.86
33,452.19
Contingent claim on $350,000 notes of
the Goff-Kirby Co. per Settlement
proposal
175,000.00
14,311.42
$2,579,084.86
$455,822.76
Class "A" no par value
50,000
Class "B" no par value
100,000
The stockholders, bondholders, and note creditors of Delaware, who participated in the plan of reorganization, had an aggregate cost basis of their respective shares, bonds, and notes as of June 30, 1935 as follows: Class "A" stockholders
$1,420,434.97
Class "B" stockholders
1,464,032.60 *
Bondholders
1,909,483.78
Note creditors
251,684.86
Goff-Kirby note holders
175,000.00
$5,220,636.21
The balance sheet of Delaware at June 30, 1935 reveals that its liabilities to creditors aggregated $3,190,789.12 and that it possessed assets as follows: CURRENT ASSETS:
Cash: On hand and on deposit
$ 266,242.26
Receivables: Customers' notes and accounts re-
ceivable
$ 118,091.98
Less: Allowance for doubtful
$ 5,088.26
Allowance for discounts
4,079.98
9,168.24
108,923.74
Inventory: Raw materials, clinker and cement
174,151.71
Supplies (less reserve)
60,913.22
Sacks (less reserve)
92,672.66
327,737.59
Advance stripping for future 12
mos operation
12,900.00
Other Assets: Rents receivable
28,699.67
Less: Allowance for doubtful
28,699.67
00
Other receivables
1,822.99
Other assets
382,330.99
384,153.98
Capital Assets: Limestone properties (cost)
535,358.07
Less: Accrued depletion
27,149.79
508,208.28
Real estate and plant sites (cost)
117,810.88
Plant and equipment (cost)
3,522,229.57
Less: Accrued & special depreciation
2,063,843.81
1,468,385.76
Patents (cost less amortization)
2,755.28
2,097,160.20
Deferred Assets: Advanced royalties
255,846.78
Advanced stripping
154,346.84
Unexpired insurance premiums, ex-
penses, etc.
12,850.07
Reorganization and bond issue ex-
penses
40,000.00
Excess plant values above cost
1,473,204.69
1,906,248.38
$5,103,366.15
*51 In connection with the reorganization proceedings the evidence of valuation of the assets of the debtor corporation, Delaware, consisted of an appraisal made at the direction of the bondholders' committee by and under the supervision of Delaware's president. The appraisal had been made prior to December 9, 1934, when the petition for reorganization was filed, and was brought up to date for said date and subsequently until consummation of the plan of reorganization. The appraisal disclosed that the sound value of Delaware's fixed and permanent assets, including real estate, plant, equipment, fixtures, and machinery, was $2,100,280.93 as of December 9, 1934 and July 1, 1935. Those assets were reflected upon the books of Delaware in the balance sheet of December 9, 1934 at the figure of $3,635,537.62, and substantially as reflected in the balance sheet of June 30, 1935. In addition, the appraisal disclosed that advanced royalties for limestone reflected upon the balance sheet of December 9, 1934 in the amount of $235,003.45 had a value of $120,000 and that the other assets were substantially as carried on the books. In its decree dated April 29, 1935, confirming the plan of reorganization, *52 the District Court found that the appraisal was competently, carefully, and honestly made and that an independent appraisal was unnecessary. It was further found that although due to the economic conditions existing at that time a very low return to creditors would result if the property were sold, the reasonable sound value of Delaware's assets exceeded its liabilities. Petitioner's balance sheet as of July 1, 1935, recorded its liabilities to creditors at $1,445,423.94 and its assets as follows: CURRENT ASSETS:
Cash: On hand and on deposit
$ 266,242.26
Receivables: Customers' notes and accounts re-
ceivable
$ 118,091.98
Less: Allowance for doubtful
$ 5,088.26
Allowance for discounts
4,079.98
9,168.24
108,923.74
Inventory: Raw materials, clinker and cement
174,151.71
Supplies (less reserve)
60,913.22
Sacks (less reserve)
92,672.66
327,737.59
Advance stripping for future 12
mos. operation
12,900.00
Other Assets: Miscellaneous assets (less reserves)
24,669.74
Other receivables
1,822.99
Rent accts. receivable
28,699.67
Less: Allowance for loss
28,699.67
00
26,492.73
Capital Assets: As appraised at July 1, 1935 by the
Board of Directors, net book
value adjusted to this appraisal
Limestone properties
249,806.00
Real estate and plant sites
65,780.00
Plant & equipment
1,784,694.93
2,100,280.93
Patents
2,755.28
2,103,036.21
Deferred Assets: Advanced royalties
126,405.76
Advanced stripping
154,346.84
Unexpired insurance premiums, ex-
penses, etc.
12,850.07
293,602.67
$3,138,935.20
*53 The item "Miscellaneous Assets (less reserves)," $24,669.74, under "Other Assets" consists of miscellaneous assets in the amount of $507,562.01 less a reserve for contingencies in the amount of $482,892.27, as follows: Goff-Kirby Co. (Standard Slag
Co.)
$189,311.42
1930 Income Tax Refund Claim
22,614.50
Stock - The Goff-Kirby Co.
1.00
Stock - Joliette Steel, Ltd.
5,950.00
Guardian Trust Co. - "Restricted
Account"
4,740.34
Suspense Accounts Receivable
159,713.73
Advanced Royalties (Arrel Lease)
99,441.02
Expenses on new 6% Bond Issue
25,790.00
Total
$507,562.01
Less - Reserve for Contingencies
482,892.27
$ 24,669.74 The "Reserve for Contingencies" includes $178,792.27 of surplus appropriated for possible losses on the Goff-Kirby item ($175,000) and the Guardian Trust "Restricted Account" ($3,792.27). It also includes $143,100 transferred from "Accrual for Doubtful Accounts", and $136,000 appropriated from surplus "To set up additional amount in Reserve for Contingencies." In 1941 petitioner sold the above mentioned Joliette Steel stock which consisted of 62 preferred shares and 298 common shares for a total consideration of $4,360. This stock had been carried on the books of Delaware at a value of $5,950 *54 and was included at that value in the item "Other Assets" reflected on Delaware's balance sheet of June 30, 1935 in the aggregate of $382,330.99. In 1941 and 1942 petitioner collected the following amounts in accounts receivable of Delaware which it had taken over as part of the assets transferred in the reorganization: 1941
Sheesley Company
$3,810.04
E. E. Austin Co.
78.14
$3,888.18
1942
Sheesley Company
$3,194.06
Guardian Trust Co.
258.25
$3,452.31 The Sheesley and Austin receivables were included in Delaware's balance sheet of June 30, 1935 and petitioner's balance sheet of July 1, 1935 amongst a large group of receivables collectively reflected in the item "Customers' notes and Accounts Receivable" totaling $118,091.98 against which reserves totaling $9,168.24 had been set up for doubtful accounts ($5,088.26) and discounts ($4,079.98). The amount received from the Guardian Trust Co. represented realization on the item "Guardian Trust Co. 'Restricted Account'" included amongst "Miscellaneous Assets (less reserves)" in the balance sheet of July 1, 1935. In computing petitioner's income and excess profits taxes for 1941 and 1942 both petitioner and respondent proceeded upon the assumption that *55 Delaware's assets were received by petitioner in a taxable rather than a nontaxable exchange. Accordingly, the basis used for the assets was a value agreed upon with the Bureau of Internal Revenue after conferences respecting petitioner's returns for 1936, 1937, and 1938. Specifically petitioner and Commissioner agreed that the fair market value of the depreciable assets at July 1, 1935 was as follows: Cement Plant
$1,176,989.93
Stone Plant
374,175.00
Miscellaneous
227,003.51
$1,778,168.44
The details of petitioner's fixed assets and the rates of depreciation applicable thereto for the purpose of computing the correct depreciation allowances for 1941 and 1942 and for all computations under Rule 50 are not in dispute and are as set forth in the exhibits incorporated herein. On December 23, 1948, after the mailing of the deficiency notice, petitioner paid to the collector of internal revenue for the eighteenth district of Ohio on account of the determined deficiencies the following amounts: For 1941
Tax
$38,283.18
Interest
15,575.49
Total
$ 53,858.67
For 1942
Tax
$81,770.79
Interest
28,362.14
Total
$110,132.93
$163,991.60
The exchange whereby petitioner acquired the assets of Delaware constituted a tax-free *56 transaction within the meaning of section 112(b)(5) of the Revenue Act of 1934. Bessemer Limestone & Cement Co., 22 T.C. 303. Opinion Respondent has made no determination of income tax deficiency against petitioner for the year 1942. We are accordingly without jurisdiction to consider that aspect of petitioner's claim. Respondent's motion to dismiss to that extent must therefore be granted. Gage Brothers & Co., 13 T.C. 472; Difco Laboratories, Inc., 10 T.C. 660. Likewise, the issue raised by petitioner with respect to respondent's alleged failure to allow a 10 per cent postwar credit in determining the deficiency in excess profits tax for 1942 is a matter without the jurisdiction of this Court. California Vegetable Concentrates, Inc., 10 T.C. 1158. The principal issue now presented for our determination is the basis to petitioner of the assets acquired from Delaware. We have ruled at 22 T.C. 303 that the exchange whereby petitioner acquired those assets was nontaxable under section 112(b)(5) of the Revenue Act of 1934. [1] Accordingly the basis to petitioner of such assets is the same as it would be in the hands of the transferor increased in the amount of gain or decreased *57 in the amount of loss recognized to the transferor upon the transfer. Section 113(a)(8), Revenue Act of 1934; section 113(a)(8) and (16), Internal Revenue Code of 1939. The transferors in the instant case were the creditors and shareholders of Delaware. Bessemer Limestone & Cement Co., supra; cf. Gage Brothers & Co., supra; Alexander E. Duncan, 9 T.C. 468; Miller & Paine, 42 B.T.A. 586; Helvering v. Cement Investors, Inc., 316 U.S. 527. It is respondent's position, assuming a nontaxable exchange under section 112(b)(5), that "at some time prior to the nontaxable *58 exchange there necessarily emsued a separate and taxable transaction by which the assets of Delaware were distributed or liquidated in kind to the transferors, and that, accordingly, the transferors' aggregate basis as well as petitioner's substituted basis under the provisions of section 113(a)(8) of the Revenue Act of 1934 was the fair market value of the assets at the time of the prior taxable event." We rejected this argument in Gage Brothers & Co., supra, wherein we held that the basis of the assets to the transferee was the aggregate of the bases of the stockholders and creditors of the debtor corporation who participated in the plan of reorganization for their stock and securities of that company. We think that the facts in the instant case are indistinguishable from those present in the Gage case and for the reasons stated therein we adhere to that decision. It has been stipulated that the aggregate basis to the bondholders, note creditors, and the stockholders of Delaware, participating in the plan of reorganization, for their securities and stock is $5,220,636.21. Therefore such sum is the basis to petitioner of the assets acquired and respondent's determination is accordingly *59 overruled. Petitioner has suggested that $455,822.76, the amount of interest owed to Delaware's creditors as of January 1, 1935, should be included in the basis of the assets acquired. Petitioner reasons that as its stock was exchanged for the unpaid interest, as well as principal indebtedness, the transferors' cost basis included such interest. Certainly it cannot be claimed that the historical basis of the securities exchanged by the Delaware creditors included this interest, and upon the state of this record we cannot say that any of Delaware's creditors had a basis in any part of the unpaid interest. An income item cannot be converted into a capital asset, having a cost basis, until it is first taken into income. Artis C. Bryan, 16 T.C. 972; Ruth B. Rains, 38 B.T.A. 1189. It is equally clear that Delaware's creditors realized no gain (which would increase petitioner's basis) upon the receipt of stock for the unpaid interest. William W. Carman, 13 T.C. 1029, affd. 189 Fed. (2d)363; Morris Shanis, 19 T.C. 641, affd. per curiam, 213 Fed. (2d) 151; Estate of William Bernstein, 22 T.C. 1364; United Gas Improvements Co., 25 T.C. 229 (on appeal C.A. 3). A fair allocation of *60 petitioner's aggregate basis can be made so as to arrive at the basis of individual assets by applying to such aggregate basis the ratio that the value of an individual asset bears to the value of all of the assets as reflected on petitioner's balance sheet of July 1, 1935. Cf. Nathan Blum, 5 T.C. 702; C. D. Johnson Lumber Corporation, 12 T.C. 348. In making such allocation cash and its equivalents should be eliminated from the allocation and only the remaining assets should be apportioned to the balance of the aggregate basis. Having determined the basis to petitioner of the assets acquired and the formula for determining the basis of the individual assets, computation by the parties of petitioner's invested capital excess profits credits, depreciation, gain or loss on the disposition of the Joliette Steel stock, the realization of income upon the receipt of sums due on the Sheesley, Austin, and Guardian Trust accounts, as well as the availability and amounts of unused excess profits credit carry-backs from 1943 and 1944 and an unused excess profits credit carryover from 1940 should follow automatically. We think, however, that some comment with respect to the computation of the *61 unused excess profits credits for 1943 and 1944 to be carried back to 1941 and 1942 is necessary. Section 121 of the Revenue Act of 1943 added to the Internal Revenue Code of 1939 section 112(b)(10) providing for the non-recognition of gain or loss on reorganization of corporations in 77-B proceedings and section 113(a)(22) providing in general for the use by a successor corporation of the basis of its predecessor corporation if the successor acquired title through a 77-B proceeding (as was the case here). Subsection(e) of section 121 provided, however, that the above provisions "shall be deemed to be included in the revenue laws respectively applicable to taxable years beginning after December 31, 1933, but shall not affect any tax liability for any taxable year beginning prior to January 1, 1943." [Emphasis supplied] Therefore for 1943 and 1944 petitioner's excess profits credits are to be computed in accordance with the basis of its predecessor corporation for the assets acquired from such predecessor on July 1, 1935. See Regulations 111, sec. 29.113(a)(22)-1. It is quite clear, however, that such computations can in no way affect the tax liability of petitioner for 1941 and 1942, *62 as those years are "taxable years beginning prior to January 1, 1943." Cf. Reo Motors, Inc. v. Commissioner, 338 U.S. 442. Therefore, the unused excess profits credits for 1943 and 1944 for use in 1941 and 1942 must be computed as though petitioner's substituted basis as determined supra were applicable in 1943 and 1944. Cf. Community Public Service Co., 12 T.C. 893, affd. 183 Fed. (2d) 765. We hold that petitioner is entitled to the refund of such overpayments in income and excess profits taxes for 1941 and in excess profits tax for 1942 as are disclosed by the Rule 50 computation. Decision will be entered under Rule 50. Footnotes
*. On brief petitioner lists this amount as $1,465,032.60.↩
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(b) Exchanges Solely in Kind - * * *
(5) Transfer to Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.↩