ANNIE LAURIE CRAWFORD AND THE UNION TRUST COMPANY OF PITTSBURGH, EXECUTORS OF THE WILL OF GEORGE W. CRAWFORD, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88072. Promulgated March 3, 1939.

*David B. Buerger*, Esq., and *John G. Buchanan*, Esq., for the petitioners.

*Ralph E. Smith*, Esq., and *W. G. Cullen*, Esq., for the respondent.

OPINION.

HILL: The respondent determined an income tax deficiency of $138,-492.74 for 1932 against the petitioners as coexecutors of the will of George W. Crawford, deceased. Petitioners filed this proceeding to review that determination, and also for a determination by the Board of an alleged overpayment of taxes amounting to $39,883.56 for said year. The respondent, upon authority of *Helvering* v. *Gowran*, 302 U. S. 238, rendered since his said determination, concedes the deficiency issue in favor of the petitioners. We agree to the correctness of the concession on the part of the respondent and accordingly hold that there is no deficiency in tax herein against the petitioners. This leaves in controversy only the claim of tax overpayment. The facts are stipulated.

The petitioners are executors of the will of George W. Crawford, deceased. During his lifetime the decedent was a one-fourth coowner of the Venempa Investment Co., a partnership, formed December 26, 1928, in Pittsburgh, Pennsylvania, to engage in buying, selling, and dealing in stocks, bonds, and other commercial securities. Including contributions made at the time of the partnership's organization, each of the four partners paid in to its capital cash in the amount of $262,815.96, and securities for which they were given capital credits on the partnership books. The securities contributed by the decedent included 10,000 shares of Western Public Service Corporation stock which cost him $25,200 when acquired in 1928; also, two blocks (of 1,250 shares each) of Lone Star Gas Corporation stock, each block costing $5,195.27 when purchased. The 10,000 shares of Western Public Service Corporation stock had a fair market value of $283,125 when contributed to the partnership, and decedent received a credit upon the partnership books in the amount of their cost ($25,200) for the same. The two blocks of Lone Star Gas Corporation stock had fair market values in the respective amounts of $82,812.50 and $81,250 when contributed to the partnership, and decedent received a credit therefor upon the partnership books in the respective amounts of $81,250 and $50,000.

In and during the years 1928 to 1932, inclusive, the partnership had net earnings which, for the whole period, exceeded its losses. It distributed no part of its earning to members and, at the end of 1932, had on hand undistributed earnings, represented principally by investments in securities, of which the value of decedent's partnership interest amounted to $128,250.65. On December 31 of the latter year the partnership was dissolved by mutual consent and its assets distributed. The decedent received in this distribution $83.69 in cash and securities of a total market value amounting to $233,500.

In decedent's income tax return for 1932 no deduction from gross income was claimed for any loss sustained in liquidating his interest, as aforesaid, in the partnership. The petitioners claim, and ask us to find in this proceeding, that a loss was sustained in that transaction, and that failure to take a deduction for it in decedent's income tax return for 1932 resulted in an overpayment of taxes in the amount of $39,883.56. The issue is governed by the Revenue Act of 1932, and the pertinent provisions of Treasury Regulations No. 77.

Relating to "Readjustment of Partnership Interests," article 604 of Regulations 77, among other things, provides that when a partner retires from a partnership, or it is dissolved, the partner realizes a gain or loss measured by the difference between the *price received* for his interest and the *cost to him* of such interest, including in such cost the partner's share in undistributed partnership net income on which income taxes have been paid. Also, that if in a dissolution the partnership assets are distributed to the members *in kind and not in cash*, the partner *realizes no gain or loss until he disposes of the property received in liquidation.*

The petitioners contend that by virtue of the provision first above mentioned, a loss to the decedent through liquidation of his partnership interest is established. That this loss is the amount by which the cost of his partnership interest exceeds the cash ($83.69) and the market value ($233,500) of the assets distributed to him.

The parties are in accord on the cost of decedent's partnership interest. They also agree what the "market value" of all assets distributed to decedent was when the partnership was dissolved. However, at the time the return here involved was filed, the assets distributed to decedent had not been disposed of, and the respondent contends that, under the provision of the regulation last above mentioned, no gain or loss may be recognized until a sale or disposition of them has been made. The petitioners counter this contention with the argument that application of the provision is logical and proper, only when applied to cases where the assets distributed in a partnership liquidation have no determinable value. They argue that where basic values are agreed upon, as in the case at bar, the actual gain or loss is *ipso facto* established and must be recognized under the provisions of such regulations, as well as under the provisions of section 111 of the Revenue Act of 1932, reading as follows:

(a) COMPUTATION OF GAIN OR LOSS.—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b), and the loss shall be the excess of such basis over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

The petitioners also contend that the effect of respondent's holding in the premises is to place an unconstitutional construction upon and render void the provision of the regulation relied upon by him.

In pressing their argument that the challenged portion of the article is illegal, and therefore void, the petitioners admit in their brief that they know of no case directly in point, but cite *Helvering* v. *Walbridge*, 70 Fed. (2d) 683, where the court in its opinion by way of *dictum* referred to the provision as "of doubtful validity", except in cases where the asset dealt with had no fair market value. Petitioners also quote "Magill" on taxable income, where that author in discussing a related phase of the problem of partnership gains refers to reasons given by the Advisory Board of the Treasury for the rule of construction here applied by the respondent, as "not wholly convincing."

In our opinion the portion of the regulation objected to by the petitioners is reasonable in its application to the facts before us and must be sustained. Obviously, the petitioners misconstrue the exact character of the transactions which, they conclude, resulted in a loss to the decedent. The net effect of petitioners' reasoning is that, when a partnership dissolves and distributes its capital assets among members, each member *disposes* of his partnership interest for a price, or that he receives such distribution in cancellation or redemption of an interest in the partnership. The fact is that such distribution does not confer title to the assets upon the members, but is merely an apportioning among them of what they already owned jointly. Petitioners' decedent and others contributed securities and cash to a fund to be used in the partnership business. The partnership operated this fund over a period of years. The net profits from such operation were taxable distributively to the members of the partnership and likewise the net losses of the operation were deductible proportionately by the members in determining their income tax liability. What remained of the fund at the dissolution of the partnership was the property of the members and was the residuum of what they had contributed to the fund. The partnership fund was at all times the property of the members and neither the dissolution of the partnership nor the distribution of the fund affected such ownership in any way.

The fallacy of petitioners' assumption is clear when one considers the character of partnerships. An ordinary partnership, such as we have here, has no entity in the sense that it may own property separate and apart from the ownership thereof of its members. The members, at all times, own the partnership business and the assets employed in it, and are, therefore, never separated from title thereto. The dissolution of the partnership in question in no way affected the title to the assets of the partnership fund but the title to such assets, which, *ab initio* had rested in the members,

continued in them. Accordingly, the distribution of assets which took place upon dissolution of the partnership neither added to, nor took from, the economic interests of the partners. The net effect of the process was not to create new interests and values, but merely to apportion and deliver to each member, according to his ratable interest, that which represented his then investment, leaving him no richer or poorer than he was before the dissolution. Cf. *William S. Gordon, Trustee*, 33 B. T. A. 460, 464; *J. Henry Dick Estate*, 20 B. T. A. 637. Such result, of course, does not obtain where the partnership is a business syndicate beyond the direct control of the individual members. *William S. Gordon, Trustee, supra.* Nor, in a case where a partner sells his interest to another, or retires from the partnership, upon an agreed consideration and the business is continued. In such cases, title to the retiring partner's interest passes to another, and a closed transaction takes place. *Hill* v. *Commissioner*, 38 Fed. (2d) 165; *Pope* v. *Commissioner*, 39 Fed. (2d) 420.

The distinction between the transaction at bar and the cases just cited by us is obvious and clear. What the decedent received in the distribution was not a consideration in exchange for his investment in the partnership fund, but his aliquot part, in kind, of the assets comprising such fund which theretofore he and his partners owned and held at risk in the business. Obviously, there was no disposition of partnership interest or of the interest of decedent in the partnership fund in this case and the provision of the regulation aptly applied to the transaction.

The petitioners' contention that the challenged provision denies to them the benefit of loss deductions otherwise allowable under the revenue acts is unwarranted by the facts. The petitioners assume that a loss must be conceded, because the stipulation shows that the market value of the assets distributed to decedent was less than his contributions to the partnership's capital plus his part of its undisbursed income. This assumption is erroneous. As hereinbefore pointed out, the assets received by the decedent on dissolution of the partnership represented his part in an investment which still exists. The fact that the investment was made through the medium of a partnership did not change its character, and the *provision of the regulation, supra*, which postpones realization of gain or loss until the assets are sold is obviously made to preserve such character.

The petitioners cite certain court and Board decisions which they contend support their theory that the distribution here considered must be given the effect of a sale or exchange in which a transfer of title to an interest in the assets disbursed took place. Among the cases cited in support of such theory are the Board cases of *Edward B. Archibald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720; *Carroll E.*

*Donner et al., Executors*, 32 B. T. A. 364, and *Cyrus S. Eaton*, 37 B. T. A. 715; and Federal court cases, *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; and *Helvering* v. *Walbridge, supra.*

In our opinion, none of the cases so cited support the contentions petitioners here make. Rather, we think, if applicable to any phase of this controversy, the cases, in so far as they throw light, support the respondent's theory that the bare distribution of partnership assets "in kind" upon dissolution is not such a liquidation of the partner's interest as to bring into realization gain or loss to the partner. The cases cited do not deal with dissolved partnerships, or the direct question here involved. They do deal, however, with questions involving the taxability to partners, as individuals, of the increments or values by which assets contributed to the partnership capital may have increased over their initial cost to the partner.

On the latter question, the cases cited concur in holding that no gain results to the contributing partner for the increment to assets contributed in kind to the partnership until the partnership is dissolved; because, until then, there is no liquidation of the assets whereby such increment can be realized as gain. Moreover, the cases hold that the ownership of partnership assets, at all times, is in the members; from which it follows that, when the assets are distributed "in kind", rather than being liquidated through sale and the cash disbursed, the partner receives, individually, his interest or part of that property which he therefore already owned, although collectively or jointly with his copartners. If the corpus of the partnership is first reduced to cash, and the cash distributed to the member, then, of course, gain or loss may be realized as provided for in like cases of sales of property. We find no conflict in the decisions cited and the views we have herein expressed. We think the provision in the regulation challenged is in harmony with the law and we therefore sustain the respondent's interpretation.

In view of our findings, we hold that the decedent suffered no loss in the taxable year for which petitioners are now entitled to take additional income tax deductions, and their claim of overpayment of taxes is, therefore, not sustained. The result of our findings makes unnecessary our consideration of respondent's alternative prayer for readjustment of charitable deductions.

> *Decision of no deficiency and no overpayment of taxes will be entered.*