**CORA–TEXAS MANUFACTURING COMPANY, Inc.**

v.

**UNITED STATES of America.**

**Civ. A. No. 1961.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Oct. 16, 1963.

**528**

Paul G. Borron, Jr., G. T. Owen, Jr., Borron, Owen, Borron & Delahaye, Baton Rouge, La., for plaintiff.

Louis C. LaCour, U. S. Atty., L. Howard McCurdy, Jr., Asst. U. S. Atty., New Orleans, La., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, George A. Hrdlicka, Stanley F. Krysa, Washington, D. C., Jerome J. Reso, Jr., Attys., Dept. of Justice, Fort Worth, Tex., for defendant.

WEST, District Judge.

This suit involves a claim for refund of income taxes paid by the plaintiff corporation, Cora-Texas Manufacturing Company, Inc., for its fiscal year ending February 28, 1950. Petitioner contends that an item of $66,661.51 deducted by it as an ordinary business expense for that year was improperly disallowed by the Commissioner of Internal Revenue, resulting in an overpayment of income taxes by the corporation for that year of $27,-841.96, which amount, together with interest, it now seeks to recover.

At the beginning of the taxable year in question, taxpayer corporation, Cora-Texas Manufacturing Company, Inc. (hereinafter referred to as Cora, Inc.) had 26 shares of common stock outstanding, 13 shares of which were owned by the Kessler, Gilbert and Dugas families (hereinafter referred to as the Kessler interests), and 13 shares of which were owned by L. N. Folse, Inc., (a family corporation hereinafter referred to as the Folse interests). The only asset of this corporation was a sugar mill which it leased to a partnership known as the Cora-Texas Company (sometimes hereinafter referred to simply as the partnership). This partnership was owned 50 per cent by the Kessler interests and 50 per cent by the Folse interests. Its sole business consisted of the production of sugar products by operating the mill which it leased from Cora, Inc. There was also a third business entity known as Cora Planting Company, which was also a partnership owned entirely by the Kessler interests. This partnership owned agricultural lands and was engaged in the production and sale of sugar cane, which it processed through the mill owned by Cora, Inc., and leased to and operated by the Cora-Texas Company partnership.

During the taxable year in question disputes apparently arose between the Kessler interests and the Folse interests as to the operation of the sugar mill. The Folse interests threatened to force a closing of the mill and a subsequent liquidation of both the Cora-Texas Company and Cora, Inc. However, after lengthy negotiations, the Folse interests finally agreed to sell their entire interest in both operations to the Kessler interests. As a result of this agreement, the taxpayer corporation, Cora, Inc., purchased the 50 per cent interest in the Cora-Texas Company owned by the Folse interests for $81,200, and the Cora Planting Company partnership purchased the 13 shares of Cora, Inc. owned by the Folse interests for $31,600. These transfers of interests were consummated by the purchasers paying the purchase price partly in cash and partly by the giving of promissory notes to the sellers, and resulted in the Kessler interests owning completely all three of the operations. At the time of these transactions, the net worth of Cora-Texas Company was approximately $35,000.

The transfer of these interests from Folse to Kessler occurred in April, 1949. Thereafter, and until December, 1949, the three business entities continued to operate as they had in the past, except under the sole ownership and control of the Kessler interests. On September 17, 1949, the articles of incorporation of Cora, Inc. were amended to provide the authorization for the issuance of 300,000 shares of preferred stock having a par value of $1.00 per share. (Prior to this amendment, the corporation was authorized to issue only 50 shares of common stock having a par value of $100 per

share.) This amendment provided that the preferred stock so authorized was to be preferred as to dividends and also as to the assets of the corporation on liquidation. It was non-cumulative and was entitled to dividends not to exceed 4 per cent per annum, the payment of which dividends was required before any dividends on common stock could be paid. The amendment further provided that the corporation could, at any time, redeem or retire any or all of the outstanding preferred stock by paying to the holder thereof the par value of the stock plus any dividend declared and unpaid at the time of redemption. It also provided that such retired or redeemed preferred stock must be cancelled and could not be reissued by the corporation. Although the evidence shows that at the time the Kessler interests purchased the Folse interests, they, the Kesslers, anticipated the ultimate dissolution of the Cora-Texas Company partnership, nevertheless it was not until December, 1949, that this dissolution was effected. The liquidation of the partnership began on December 10, 1949. At that time, the only asset owned by the partnership was an account receivable in the amount of $147,823.81 due from Cora, Inc. Its only liability was an account payable to Cora Planting Company in the amount of $112,931.91, leaving a net worth of $34,891.90.

In order to implement the decision to liquidate the partnership, the Kessler interests, who now wholly own and control Cora, Inc., the partnership and Cora Planting Company, arranged for Cora, Inc. to issue to the partnership 147,823.81 shares of its $1.00 par value preferred stock in payment of the corporation's debt to the partnership. The partnership, then, in turn, transferred 112,931.91 of these shares to Cora Planting Company, in payment of its debt to that partnership. This left Cora-Texas Company with 34,891.90 shares of the $1.00 par value preferred stock of Cora, Inc. as its only asset, and with no liabilities. The partnership was then liquidated on December 29, 1949. In representation of its one-half ownership in the partnership, 17,445.95 shares of the preferred stock of Cora, Inc. were distributed to the taxpayer corporation, and the remaining 17,445.95 shares were distributed to the Kessler, Gilbert and Dugas families, who individually owned the other one-half interest in the partnership. When the taxpayer corporation, Cora, Inc., filed its income tax return for its fiscal year ending February 28, 1950, it claimed a deduction of $66,661.51 resulting from the liquidation of the partnership. This amount was claimed as an ordinary business expense of the corporation, and was arrived at by subtracting the value of the preferred stock received from the partnership upon liquidation from the amount which the plaintiff corporation originally paid for its one-half interest in the partnership. (Actually, by deducting the value of the stock received by the plaintiff, $17,445.95, from the amount which plaintiff corporation originally paid for its one-half interest in the partnership, $81,200, the difference is $63,754.05. It is not apparent from the record what causes the difference between that figure and the $66,661.51 claimed by the plaintiff, but for the purposes of this opinion, it is not important.)

This claimed deduction was disallowed by the Commissioner of Internal Revenue on the grounds first, that since the distribution of the assets of the partnership was a distribution of assets in kind (stock), and that since the stock received by the plaintiff corporation has never been sold or otherwise disposed of, no gain or loss can be recognized until such time as the stock is sold or otherwise disposed of, and secondly, that even if a loss occurred, it was not such an ordinary and necessary business expense as to be deductible by the corporation. Defendant contends that the expenditure by plaintiff corporation was merely a capital investment rather than a business expense.

Plaintiff taxpayer, on the other hand, contends first that the amount of the loss was definitely determined upon liquidation of the partnership due to the fact that because of the redemption provisions contained in the articles of incorporation, the stock involved has an absolute fixed

value of $1.00 per share, and that further, in accordance with the provisions of the articles of incorporation, the stock could not be re-sold or reissued by the corporation. Secondly, that since the Folse interest had, in effect, given the corporation an ultimatum to either buy them out, or suffer the plaintiff corporation and the Cora-Texas Company partnership to be liquidated, the purchase by the corporation of the Folse interests in the partnership was not an investment but a necessary business expense incurred for the sole purpose of saving the very life of the plaintiff corporation. They contend that as such, the loss incurred should be deductible as an ordinary business expense. Thus the issues are drawn.

■ Ordinarily, upon the liquidation of a partnership, whereupon the assets thereof are distributed to the partners, not in cash, but in kind, the partner receiving such assets realizes no gain or loss thereon until he disposes of the property received in liquidation. 634 CCH Par. 3953.01. Section 113(a) (13) of the Internal Revenue Code of 1939 provided:

> "If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property."

In this connection, Treasury Regulation 111 (1939 Code) Section 29.113(a) (13)–2 states:

> "If the partnership distributes its assets in kind and not in cash, the partner realizes no gain or loss until he disposes of the property received in liquidation. The basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property." See also H.Rep.No.704, 73rd Cong.2d Sess. p. 18.

The validity of this Regulation was upheld in Crawford v. Commissioner, 39 B.T.A. 521, and in Wilmot v. Commissioner, 44 B.T.A. 1155.

■ The obvious purpose of this Regulation is to postpone the determination of gain or loss until the exact amount thereof may be properly determined. In most instances, it is not possible to determine the amount of gain or loss realized until the assets thus received in liquidation are sold or otherwise disposed of, and the actual cash value thereof thus determined. However, in the instant case, a rather unusual condition existed at the time of the acquisition by the taxpayer corporation of the partnership assets. The stock received by plaintiff as its distributive share of the partnership assets had a pre-determined and fixed value. Inasmuch as this stock could, at any time, be redeemed by the corporation for its par value of $1.00 per share, plus any declared but unpaid dividends, its value, as of any specified time, could conclusively be determined. At the time plaintiff received it as a liquidating asset of the partnership, it had a maximum value of $1.00 per share, and no more. While its value might possibly have gone down, there was no way for its value to go up. Hence, the reason for the rule that no loss could be taken until the asset was disposed of ceased to exist in this case. There was also, in this case, the additional fact that when preferred stock of Cora, Inc. was retired or redeemed by the corporation it could not, pursuant to its articles of incorporation, be re-issued. Thus, the corporation was unable, in any event, to re-sell or re-issue the stock. Furthermore, the Treasury Regulation quoted above states that "The partner realizes no gain or loss until he *disposes* of the property received in liquidation." While it might be argued that technically the stock in question had not been "redeemed", because it was received by the corporation as a liquidating asset of the partnership rather than having been reacquired by purchase, nevertheless, the fact that from 1950 through 1955 dividends were regularly paid on the outstanding preferred stock of Cora, Inc., but no dividends were paid to the corporation on the stock in question, certainly indicates that the stock was obviously treated and considered by the corporation

as having been "retired". Thus, for all intents and purposes, this stock had been "disposed of" by the corporation. It had been retired, and was not subject to being re-issued. Its value was definitely determined as of the date of its re-acquisition by the corporation, and it was adequately "disposed of" by the corporation immediately upon its receipt from the partnership. Therefore, if a loss did in fact occur, it occurred on December 29, 1949, when Cora, Inc. received the stock as a liquidating asset from the partnership. Under the peculiar circumstances of this case, such a determination does no violence to either Section 113(a) (13) of the Internal Revenue Code of 1939, or to Treasury Regulation 111 (1939 Code) Section 29.113(a) (13)–2. Neither does it do violence to the holdings in the Crawford and Wilmot cases, supra.

■ The second contention of the plaintiff, however, presents a more serious and difficult problem. Plaintiff contends that it paid $81,200 for a one-half interest in the Cora-Texas Company partnership, and that upon liquidation of that partnership, it received only $17,449.95 for the same one-half interest. It argues that the purchase of the one-half interest in the partnership by the corporation was an ordinary and necessary business expense, and that hence, it is entitled to deduct this loss as a business expense. The Government, on the other hand, contends that the purchase of the one-half interest in the partnership did not involve an ordinary and necessary business expense of the corporation, but was instead a capital investment made by it, and thus, if a loss was actually sustained, such a loss would not be deductible as a business expense.

The Internal Revenue Code of 1939, Section 23, as amended by Section 121(a) of the Revenue Act of 1942, provided:

"(A) *In General.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;

traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for the purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

Both plaintiff and respondent cite numerous cases in support of their respective positions, but as the United States Supreme Court said in Welch v. Helvering, Commissioner, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212:

"Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with borderline conclusions."

And in A. Harris and Company v. Lucas, 5 Cir., 48 F.2d 187, it was stated:

"Each case depends for decision upon its own facts, and it would be impossible to formulate a uniform rule to govern all cases."

But a rule of thumb, at least, is found in the case of Commissioner of Internal Revenue v. Doyle, 7 Cir., 231 F.2d 635, wherein the Court stated:

"We construe the statutory words 'ordinary and necessary expenses' to mean those expenses which economically are an integral part of a business, whether it be lawful or unlawful. Integrality is the test. Disbursements which fail to meet this test, although they be concomitants to the business as operated by some persons, are not ordinary and necessary expenses thereof within the meaning of sec. 23(a)." See also Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29.

■■ Generally speaking, if the expenses incurred are incident to a merger or reorganization of a business rather than expenses incurred in the ordinary

conduct of the business itself, such expenses are not deductible as "ordinary business expenses" under Section 23(a). Motion Picture Capital Corp. v. Commissioner of Internal Revenue, 2 Cir., 80 F. 2d 872; Bush Terminal Bldgs. Co. v. Commissioner of Internal Revenue, 2 Cir., 204 F.2d 575. Amounts paid in order to gain control of a company are generally not deductible as ordinary business expenses, but are rather to be treated as capital expenditures. Atlantic Coast Line R. Co. v. Commissioner of Internal Revenue, 4 Cir., 81 F.2d 309; Newark Milk & Cream Co. v. Commissioner of Internal Revenue, 3 Cir., 34 F.2d 854.

With these general principles in mind, we turn to a consideration of the particular facts of the present case. Plaintiff corporation owned nothing but a sugar mill which it leased to the partnership, Cora-Texas Company. Plaintiff's only apparent income was from the lease of this mill. Had the partnership ceased its operations, there is no evidence to show that the mill could not have been leased by Cora, Inc. to other interests, and the business of the corporation thus continued. As a matter of fact, the record discloses that when the cessation of operations of the partnership was threatened, a group of cane growers in the area expressed an interest in forming a cooperative association to lease and operate the mill. Apparently the Folse interests were no longer interested in the business of operating the mill. The Kessler interests believed that the business could and would be profitable in the future as it had been in the past, and they wanted to continue to operate it. The business of operating the mill was a separate and distinct business from that of the plaintiff corporation. Plaintiff corporation had nothing whatsoever to do with the operation of the mill. It merely owned and leased the mill property and collected the rent. When the plaintiff corporation purchased a one-half interest in the Cora-Texas Company, it was buying into a business separate and apart from that in which it was then engaged. After the purchase of the one-half interest in the partnership by the plaintiff corporation, the partnership continued to operate as such for approximately eight months, the only difference being that after this transaction the partnership was owned one-half by plaintiff corporation and one-half individually by the Kessler, Gilbert and Dugas families instead of being owned one-half by the latter group and one-half by the Folse interests. There was no change in the nature of the operation. Then, in December of 1949, the Cora-Texas Company partnership was liquidated, and apparently the agricultural lands formerly owned by Cora Planting Company were also acquired by the plaintiff corporation. Thus the entire operation, from growing the cane to owning and operating the mill and producing the sugar products, were consolidated under the direct control and ownership of the plaintiff corporation. The testimony of Paul Kessler clearly shows that it was the intention of the Kessler group to acquire control of the entire operation and to continue to operate all phases of the business under the direct ownership and control of the plaintiff corporation. His testimony further shows that the three phases of the overall operation could have continued to be operated separately as they had in the past, particularly since the Kessler interests now owned and controlled all three business entities, but that they felt it advisable to liquidate the partnership and consolidate all phases of the business into the one corporation mainly because it would enhance their ability to borrow money to finance their operations. In other words, the liquidation of the partnership in December, 1949, was clearly an incident to the reorganization of the businesses. When the plaintiff corporation purchased a one-half interest in Cora-Texas Company in April of 1949, for the sum of $81,200, that expenditure could not be construed as an ordinary and necessary business expense of the corporation whose sole business at the time was the owning and leasing of a physical facility used as a sugar mill. This expenditure must be regarded as a capital investment made by the plaintiff corporation in a business entirely different from

that in which it was then engaged. The investment was made for the purpose of acquiring control of a related business which the plaintiff corporation believed would be profitable. It was not an ordinary and necessary business expense of the plaintiff corporation.

Furthermore, it is extremely doubtful that any loss was actually sustained by the plaintiff corporation as a result of this transaction. The alleged loss seems to be more in the nature of a fictitious paper loss occasioned by bookkeeping entries. Plaintiff purchased its interest in the partnership for a figure that it believed to be advantageous to it. In return for the purchase price it received control of the partnership which operated the mill. Even though the partnership was liquidated, the corporation acquired, retained, and still has the benefit of all of the operations of the partnership. It still carries on all of the functions and activities that were previously carried on by the partnership, and it continues to receive all of the profits that were previously received by the partnership. The liquidation of the partnership, with the attendant "book loss" to the corporation was all accomplished by the plaintiff corporation for its own benefit in the course of reorganizing and consolidating the business activities of the corporation and the partnership. Plaintiff, in effect, invested $81,200 in the purchase of one-half interest in a going partnership business. Eight months later, by simply liquidating the partnership and transferring the operations of its business from the partnership to the plaintiff corporation, plaintiff received back $17,449.95 of its $81,200 investment as a liquidating asset of the partnership. Thus, in the final analysis, plaintiff actually acquired a one-half interest in the business which operates the sugar mill for a net investment of $63,750.05. Thus, plaintiff corporation did not incur a deductible expense in the acquisition of this business, nor in connection with the liquidation of the partnership, and hence, its claim for refund must be denied.

Judgment will be entered accordingly.